## Alexander Washington, Petitioner *v.* Commissioner of Internal Revenue, Respondent

Docket No. 7092–80.    Filed September 17, 1981.

Alexander Washington, pro se.
*Clyde W. Mauldin*, for the respondent.

Dawson, *Judge*: This case was assigned to Special Trial Judge Randolph F. Caldwell, Jr., for trial pursuant to General Order No. 6, 69 T.C. XV (1978). The Court agrees with and adopts his report which is set out below.

### OPINION OF THE SPECIAL TRIAL JUDGE

Caldwell, *Special Trial Judge*: Respondent determined a deficiency in petitioner's 1977 Federal income tax in the amount of $432. At issue is whether petitioner is entitled to a deduction under section 215(a)[1] for the temporary support of his wife by making mortgage and utility payments during 1977 when both resided in the same house. The resolution of this issue depends upon whether petitioner and his wife were then "separated" within the meaning of that term as used in section 71(a)(3).

### FINDINGS OF FACT

Some of the facts were stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by reference.

---

[1]All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

Petitioner resided in Detroit, Mich., at the time he filed his petition in this case.

Petitioner and Jean Virginia Washington (Jean) were married on November 7, 1944, in Detroit, Mich. They resided in Michigan until the time of their divorce in 1978.

In April 1977, petitioner filed an action for divorce from Jean in the Circuit Court of Wayne County, Mich. (the divorce court). The principal asset of the parties at the time of the divorce action was the marital home located at 3511 Oakman Boulevard, Detroit, Mich. (the residence), which was owned by petitioner and Jean jointly, either as joint tenants or as tenants by the entireties. There was a mortgage on the property in the amount of approximately $13,000.

The issues with respect to property settlement and alimony to be paid by petitioner were litigated in the action in the divorce court.

In July 1977, Jean filed a petition with the divorce court asking that the petitioner herein (i.e., Alexander Washington) be required to pay the mortgage note, utilities, maintenance, and other expenses with respect to the residence during the pendency of the divorce action.

On July 18, 1977, the divorce court entered an order to show cause which required petitioner to show cause why that court should not direct him to make payments on the mortgage note, and utilities, maintenance, and other expenses with respect to the residence, during the pendency of the divorce action.

On August 1, 1977, the divorce court entered an order requiring petitioner to pay all mortgage payments on the residence as well as the gas, electric, and water bills. However, as to the telephone bills, petitioner and Jean, who had separate telephones, were each required to pay his or her own bill.

Petitioner and Jean, during the period from August 1, 1977, until the time of their divorce in 1978, continued to reside in the residence.

The residence was a 2½-story house consisting of a basement, first floor, and second floor. On the first floor, there were a center entrance, a center hallway, and a center staircase. On the right side of the center hallway, there were a living room and a den which together extended the full length of the house. On the left side of the center hallway, there were

a kitchen, breakfast nook, dining room, and a lavatory. On the second floor, there were a master bedroom and sitting room with two master closets, on the right side. On the left side, there were two bedrooms and a bath. In the basement, there were a recreation room, a darkroom, and a laundry room in which there were a stove, a refrigerator, and a deep freeze. The residence contained 1,863 square feet of living space.

Petitioner and Jean had not lived together as husband and wife since 1971. They occupied separate bedrooms, used separate bathrooms, prepared meals at different places (Jean in the first floor kitchen, petitioner on the facilities in the laundry room in the basement), did not eat together, and did not converse with each other.

Between August 1 and December 31, 1977, petitioner paid the following utility bills with respect to the residence:

| | |
|---|---|
| Gas | $188.00 |
| Electric | 440.00 |
| Water | 47.32 |
| Total | 675.32 |

With respect to the payments on the mortgage on the residence during the period from August 1 through December 31, 1977, petitioner paid a total amount of $1,578, as follows:

| | |
|---|---|
| Principal | $226.04 |
| Interest | 477.40 |
| Escrow | 874.56 |
| Total | 1,578.00 |

Prior to August 1, 1977, petitioner had also paid the utilities and the mortgage payments.

Petitioner claimed itemized deductions for real estate taxes and interest on the mortgage in the amount of $732.34 and $779.93. Petitioner also claimed a deduction for alimony of $2,185.18, included in which were the real estate taxes and interest separately deducted. Petitioner has conceded that he is not entitled to deduct the same amounts twice. Respondent disallowed the claimed alimony deduction.

OPINION

We must decide whether the amounts paid by petitioner for the utilities and the mortgage payments on the residence, as

he was directed to do by the Michigan divorce court, are deductible by him under section 215(a).[2] The answer depends upon whether the amounts would be includable in Jean's gross income under section 71(a)(3).[3] However, if petitioner and Jean were not "separated" when the payments were made, as respondent contends, then the amounts are not includable in Jean's gross income and petitioner is not entitled to a deduction.

What the word "separated" means for purposes of the alimony deduction is not entirely clear. In *Sydnes v. Commissioner*, 68 T.C. 170, 173–176 (1977), this Court reasoned that a husband and wife involved in divorce proceedings, but still living in the same house, were not "separated," emphasizing the language contained in section 1.71–1(b)(3), Income Tax Regs., that they must be "separated and living apart." After reviewing the pertinent legislative history, we said (68 T.C. at 175–176):

> The statutory history of the 1954 changes emphasizes that the factual status of whether the parties are separated rather than their marital status under local law is the key in determining whether amounts paid under a court order are includable in the recipient's gross income and deductible by the payor. See S. Rept. No. 1622, 83d Cong., 2d Sess. 10 (1954). We conclude that "separated" as used in the statute and "separated" as used in the regulations mean living in separate residences. Only when living in separate residences do the parties incur the duplicate living expenses normally incurred by divorced or separated couples. In the absence of such duplication, and in the absence of any legislative history cited to us which expressly elucidates what Congress intended, we find it hard to believe that a mere continuation of shared living expenses following estrangement was intended by Congress to generate a deduction when the identical expenses would have been unavailable to the husband as a deduction before the estrangement took place. Moreover, the Court should not be required to delve into the

---

[2] Sec. 215(a) provides in pertinent part:

(a) GENERAL RULE.—In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. * * *

[3] Sec. 71(a)(3) provides:

(3) DECREE FOR SUPPORT.—If a wife is separated from her husband, the wife's gross income includes periodic payments (whether or not made at regular intervals) received by her after the date of the enactment of this title from her husband under a decree entered after March 1, 1954, requiring the husband to make the payments for her support or maintenance. This paragraph shall not apply if the husband and wife make a single return jointly.

intimate question of whether husband and wife are in fact living apart while residing in the same house. We therefore conclude that petitioner and Lugene were not separated during the period from April 1 to July 9, 1971, and that petitioner is not entitled to a deduction under section 215 for the temporary support payments made to Lugene.

But the Court of Appeals for the Eighth Circuit, in reversing the Tax Court on this issue (577 F.2d 60), held that the requirement that the parties be "separated and living apart" may be met *as a factual matter*, even though they occupy the same residence, provided they occupy separate quarters.[4]

We respectfully disagree with the Court of Appeals for the Eighth Circuit. It is our view Congress intended that a husband and wife should not be treated as "separated and living apart" when both are living under the same roof. See H. Rept. 1337, 83d Cong., 2d Sess. 9–10 (1954); S. Rept. 1622, 83d Cong., 2d Sess. 10–11 (1954). Consequently, we will adhere to the rationale of our prior opinion in *Sydnes*.

Since we hold that petitioner and Jean were not "separated" during the period from August 1 through December 31, 1977, none of the amounts paid by petitioner would be includable in Jean's gross income, and therefore, no deduction is allowable to petitioner under section 215(a).

It is unnecessary to decide what portion of the disputed payments would be deductible by petitioner if he and Jean had been "separated" within the meaning of section 71(a)(3).

*Decision will be entered for the respondent.*

Reviewed by the Court.

FAY, *J.,* dissenting: I respectfully dissent. In my view, a husband and wife are not required to maintain separate physical residences in order to be "separated."

Section 71(a)(3) requires a wife to be "separated" from her husband. See sec. 7701(a)(17). Section 1.71–1(b)(3), Income Tax Regs., requires a wife and husband to be "separated *and* living

---

[4] There was apparently no physical, emotional, or social contact between the petitioner and Jean in the instant case. Indeed, the petitioner argues that, in view of the liberality of the Michigan divorce laws, it is not necessary for the parties "to go running into the streets screaming 'we're separated' in order to establish that fact."

apart." (Emphasis added.) At first blush, it seems that the regulation adds a requirement that simply is not in the statute and, therefore, is invalid to that extent. However, two considerations compel me to conclude that declaring section 1.71–1(b)(3), Income Tax Regs., invalid is not the proper action.

First, the legislative history indicates that Congress thought "living apart" was part of "separated." See S. Rept. 1622, 83d Cong., 2d Sess. 10 (1954); H. Rept. 1337, 83d Cong., 2d Sess. 9–10 (1954). While it is axiomatic that the statute and not its history is the law, that history should not be ignored needlessly. Secondly, regulations should be read so as to be valid, and the regulation at issue herein can be read in just such a way. I agree with the Eighth Circuit Court of Appeals that a wife and husband can live apart, and thus separately, in the same residence. *Sydnes v. Commissioner*, 577 F.2d 60 (8th Cir. 1978), revg. 68 T.C. 170 (1977). Surely, two persons living on separate floors of the same house are living as separate and apart as two persons occupying adjacent apartments.

Basically, the majority opinion, citing *Sydnes v. Commissioner*, 68 T.C. 170, 175–176 (1977), gives two reasons for its result: (1) Duplicate living expenses are present only when separate residences are maintained, and (2) this Court should not be required to "delve into" intimate questions. I find neither reason convincing.

I fail to see how duplicated living expenses are required under section 71. In fact, one reading of section 71(a)(1) dispels any notion that they are. If a couple is actually divorced, there is absolutely nothing in either the statute or the regulations that would deny the payor spouse an otherwise allowable alimony deduction if the divorced parties shared a residence. Should not the same rule apply for "separated" persons? As to the second reason given in the majority opinion, suffice it to say that I cannot agree that what is convenient for us should in any way interfere with our decisions as to the law.

For the above reasons, I would overrule our decision in *Sydnes* and adopt the approach of the appellate court.

WILBUR and NIMS, *JJ.*, agree with this dissenting opinion.

STERRETT, *J.*, dissenting: I respectfully dissent. While the rigid position espoused by the majority admittedly avoids the

envisioned administrative nightmare born of a factual inquiry into the issue at hand, such position fails to reflect sympathy for the unhappy realities of a disintegrating marriage and the difficult economic constraints occasioned thereby. On the other hand, the case-by-case factual inquiry proposed by my dissenting brethren would be prohibitively cumbersome and only would add to this Court's litigation backlog.

A more reasonable approach would be to rely on a State court decision, in the form of a decree for support, to determine when parties are "separated" for purposes of section 71(a)(3). It can be fairly assumed that a State court would issue a decree for support only in the event that the parties are "separated" in every meaningful sense of the word. Therefore, it seems feasible to hold that, when such decree has been entered, the husband and wife will be deemed to be "separated" for purposes of section 71(a)(3). Under this view, it would not be necessary for the Court to look behind the support decree to determine whether a husband and wife are in fact separated and living apart (by some ill-defined standard) while residing in the same house. Such an approach would relieve the Court of the need to make an examination of individual circumstances in cases where, for example, the parties cannot afford to live in separate residences during their period of separation.

Federal courts long have superimposed Federal tax consequences on State determinations of property rights. It seems equally appropriate to attach Federal consequences to a State court determination of marital rights, for such rights are peculiarly within the jurisdiction of State courts to delineate.

While I recognize that this approach does not eliminate the need for a factual determination of whether the parties are "separated" for purposes of section 71(a)(2), it does offer the benefit of some certainty to the determination of separate status required by section 71(a)(3).

NIMS, J., agrees with this dissenting opinion.

EKMAN, J., dissenting: I respectfully dissent. Although it is undisputed that the parties were living separately and had no "physical, emotional, or social contact," the majority resolute-

ly adheres to the position that we may not under any circumstances make an examination of the facts so long as the parties occupy the same residence. I find this position totally unsupported by the legislative history and expressly rejected by the Eighth Circuit in *Sydnes v. Commissioner*, 68 T.C. 170 (1977), revd. on this issue 577 F.2d 60 (8th Cir. 1978). Moreover, we should recognize that in today's society, economic conditions often make it impracticable for divorcing spouses to maintain separate residences.

The majority's view is reminiscent of the aura of judicial disapproval expressed nearly a half century ago in the much cited case of *Holt v. Holt*, 77 F.2d 538, 540 (D.C. Cir. 1935). I submit that the inflexible rule adopted by the majority is erroneous and that we should follow the rational approach of the Eighth Circuit in *Sydnes*.

TANNENWALD, IRWIN, WILBUR, and NIMS, *JJ.*, agree with this dissenting opinion.