Bertram W. COLTMAN, Jr.,
Petitioner–Appellant,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent–
Appellee.

Michelle COLTMAN, Petitioner–
Appellee,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent–
Appellant.

Nos. 92–1165, 92–1169 and 92–1170.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 10, 1992.

Decided Dec. 7, 1992.

Brian J. Yagoda, Northbrook, Ill., Michael H. Lurie, and Mark J. Unterberger

(argued), Chicago, Ill., for petitioner-appellee.

Sheldon P. Migdal and John E. Frey (argued), Wildman, Harrold, Allen & Dixon, Chicago, Ill., for petitioner-appellant.

Gary R. Allen, Ann Belanger Durney, Charles Bricken (argued), Kenneth W. Rosenberg, Dept. of Justice, Tax Div., Appellate Section; Charles S. Casazza, U.S. Tax Court; Shirley D. Peterson, Department of Justice, Tax Div.; and Brian C. Griffin, U.S. Dept. of Justice, Tax Div., Washington, D.C., for respondent.

Before FLAUM and RIPPLE, Circuit Judges, and SHADUR, Senior District Judge.[*]

SHADUR, Senior District Judge.

This three-party dispute involves the income tax deductibility or nondeductibility of payments made by a husband to his estranged wife pursuant to a court order during taxable years in which, though they were actively engaged in divorce proceedings, he had not removed himself entirely from the family residence. Bertram Coltman, Jr. ("Bertram") disputes the assertion by the Commissioner of Internal Revenue of a tax deficiency stemming from Bertram's deduction of those payments in 1982 and 1983, while the Commissioner has issued protective notices of deficiency against Bertram's ex-wife Michelle Coltman ("Michelle") for taxability of the amounts if Bertram wins.

Before the Tax Court Bertram lost and the Commissioner won—though of course the Commissioner "lost" the obverse-side-of-the-coin litigation with Michelle. Here Bertram appeals the Tax Court decision, while the Commissioner has filed a protective appeal against Michelle.

■ During the tax years at issue the relevant provisions of the Internal Revenue Code ("Code" [1]) were these: [2]

Section 71(a)(3):

Decree for Support. If a wife is separated from her husband, the wife's gross income includes periodic payments (whether or not made at regular intervals) received by her after the date of the enactment of this title from her husband under a decree entered after March 1, 1954, requiring the husband to make the payments for her support or maintenance. This paragraph shall not apply if the husband and wife make a single return jointly.

Section 215(a):

General Rule. In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year.

Section 71 was fleshed out by Treas.Reg. ("Reg.") § 1.71-1(b)(3)(i), which not too subtly altered the statutory term "separated" to "separated and living apart":

(3) Decree for support. (i) Where the husband and wife are separated and living apart and do not file a joint income tax return for the taxable year, paragraph (3) of section 71(a) requires the inclusion in the gross income of the wife of periodic payments (whether or not made at regular intervals) received by her after August 16, 1954, from her husband under any type of court order or decree (including an interlocutory decree of divorce or a decree of alimony pendente lite) entered after March 1, 1954, requiring the husband to make the payments for her support or maintenance. It is not necessary for the wife to be legally separated or divorced from her husband under a court order or decree; nor is it necessary for the order or de-

---

[*] The Honorable Milton I. Shadur, of the Northern District of Illinois, is sitting by designation.

1. Citations to Code provisions will simply take the form "Section—," omitting any reference to Title 26.

2. Since then the Code provisions that apply to payments made by one spouse (or ex-spouse) to

the other during the various stages of domestic disharmony, both before and after a formal divorce decree, have been amended. We draw no inference from the statutory changes, nor (of course) do we opine on how like payments would be treated under present law.

cree for support to be for the purpose of enforcing a written separation agreement.

Before the Tax Court the battle lines formed over the question whether the fact of the parties' living (at least part-time) under the same roof automatically rendered Bertram's payments nondeductible. Just as the only two reported Court of Appeals decisions had split between the approval of such a bright-line rule (in *Lyddan v. United States*, 721 F.2d 873, 875–76 (2d Cir.1983)) and the rejection of such a rule in favor of a factual analysis of the spouses' lack of familial relationship and their occupancy of separate quarters in the same residence (in *Sydnes v. Commissioner*, 577 F.2d 60, 62–63 (8th Cir.1978)), so the Tax Court in an earlier case (*Washington v. Commissioner*, 77 T.C. 601 (1981)) had divided sharply—the majority adhering to its own prior decision in *Sydnes* (which announced the same principle that was later espoused in *Lyddan*), while the seven dissenting judges (in three separate opinions) agreed with the Eighth Circuit's *Sydnes* opinion. In this case the Tax Court followed its own majority decision in *Washington.*

During the taxable years at issue, which included the time of the Coltmans' divorce trial, Bertram used the family residence in suburban Winnetka, Illinois as a part-time waystation between his real residence in Kenosha (where he was living with a "significant other" for most of the week) and his business in Chicago. We will not dwell as the parties have on the details of Bertram's living arrangements,[3] for we view the matter as controlled by the Reg. § 1.71–1(b)(3)(i) gloss on Section 71.

To be sure, the statutory word "separated" could arguably be read either (1) as demanding only the spouses' total marital estrangement (something that could coincide with their living separate lives under the same roof) or (2) as also requiring at least the spouses' physical separation by their not sharing the same home at all. But the Commissioner certainly made a rational choice by opting for the latter requirement in the course of construing the statute via the regulation. "Separated and living apart" is thus a valid reading of the congressional term "separated," and we reject Bertram's effort to invoke a skewed reading of "living apart" that would encompass the lifestyle that he and Michelle followed in 1982 and 1983.

■ We also decline Bertram's invitation to accept his fallback position of apportioning his payments on a day-by-day basis, based on the number of nights that he was away from Winnetka each week (nearly 70% of the time in 1982 and 85% of the time in 1983). Although that suggestion does not lack for ingenuity, there is no warrant for it in the statute or regulation—and Bertram cannot succeed by invoking *La-Bow v. Commissioner*, 763 F.2d 125 (2d Cir.1985), which dealt with two wholly discrete time periods (involving a change in the payor spouse's full-time residence, not a daily flip-flop).

One related final observation may be made, not as a reason for the result that we have reached based on the regulation's reading of Section 71, but as to the effect of that result. This is certainly an area in which a bright-line rule affords a real advantage to taxpayers, who can negotiate (or who can obtain judicial rulings as to) their financial arrangements during the unpleasantness of the pre-divorce-decree period, with full knowledge as to whether they are dealing in pre-tax or post-tax dollars. It provides a classic illustration of the

---

**3.** Should it really matter whether, as Michelle stresses, she "regularly would clean his broiling pan after Bertram failed to clean it" (it is undisputed that Bertram cooked for himself when he ate any meals in the house), or whether "Bertram regularly ate the children's breakfast cereal" (both those quotations are from Michelle's Br. vi), or whether Bertram's occasional use of the middle bathroom rather than his own "caus[ed] his younger son to miss his school bus which obligated Michelle to drive their younger son to school" (*id.* at v)? Despite those and similar nits on which Michelle and the Commissioner rely, if in law the statutory term "separated" were to be equated with "estranged" rather than with the regulation's "separated and living apart," the nature of the armed-camp existence between the parties in 1982 and 1983 would certainly have met the former standard.

Coase Theorem, which has earned Professor Ronald Coase a long-belated but much-deserved Nobel Prize: So long as the rule of law is known when parties act, the ultimate economic result is the same no matter which way the law has resolved the issue. That of course provides cold comfort for Bertram, who has had the misfortune to negotiate without that degree of legal certainty.

In sum, we come down on the same side of the issue as *Lyddan* and the majority of the Tax Court judges. Both decisions of the Tax Court—that in favor of the Commissioner against Bertram, and that in favor of Michelle against the Commissioner—are AFFIRMED.