50 East 75th Street Corporation, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket 49250. Promulgated October 31, 1933.

*Francis L. Casey, Esq.*, and *Henry Mannix, Esq.*, for the petitioner. *Prew Savoy, Esq.*, for the respondent.

OPINION.

ARUNDELL: Petitioner contends that in selling the stock of the corporate owner of the apartment house it regularly sold personal property on the installment plan, hence it is entitled to report income from such sales on the installment basis prescribed in section 212 (d) of the Revenue Act of 1926. The material part of the

statute is set out in the margin.[1]  Petitioner reported income from the sale of stock on the installment basis, using as basic figures the cash received, $532,600, and the net contract sales price of the 10,290 shares in the amount of $1,013,683.47.  The fraction represented by these figures, $\frac{532,600}{1,013,683.47}$, it applied to the profit of $322,195.47 and thus computed a taxable profit for 1927 of $169,281.50.  There is no dispute as to the profit figure of $322,195.47.  The respondent treated the entire profit, less a discount of $4,500 on second mortgages, as taxable in 1927.  In so doing he included in income the promissory notes of purchasers at full face value, mortgages receivable at 85 percent of face value, accounts receivable in the amount of $255,755, and real estate received for stock at $80,345, which is stated to be appraised value less a mortgage of $30,000  We may say in passing that the pleadings raise an issue as to the values attributed by respondent to the notes, mortgages, accounts receivable, and real estate, but no evidence whatsoever was introduced by petitioner to show error in this respect.  Respondent's position is that the sale of stock was a single venture and petitioner was not engaged in regularly selling on the installment plan.

There is no evidence that petitioner ever engaged in any other project similar to the one described in the findings, and so the question must be decided entirely on the facts as they are shown in connection with the sale of stock of the one corporation.  The statute limits the use of the installment basis to those persons who " regularly " sell " on the installment plan."  The statute does not define the term " regularly ", but the respondent's regulations have consistently employed the phrase " dealers in personal property " as descriptive of the class to whom the installment provisions apply. We strongly doubt whether the acquisition and sale of one lot of personal property can properly constitute one a dealer in such property.  The term rather applies to those who engage continuously in such an activity.  The installment plan of returning income is intended for use where the purchaser extends his payments into at least one year following that of the sale.  Obviously if all installments are paid up in the year of sale there is no occasion for applying the installment method of computing profit, as it is all realized within the year.  The evidence here leaves considerable doubt as to whether petitioner operated on the installment plan as that term is commonly understood.  It is stipulated that petitioner erected the apartment house " in 1926 and 1927 ", which, we take it, means that it was com-

---

[1] SEC. 212. (d) Under regulations prescribed by the Commissioner with the approval of the Secretary, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the total profit realized or to be realized when the payment is completed, bears to the total contract price. * * *

pleted and ready for occupancy in the year 1927. Ten of the twenty-two subscription agreements provided for payment of the last installment upon issuance of a certificate of occupancy, and as to these it must be assumed that full payment was contemplated within 1927 when the building was completed. Six of the group of ten were actually paid up in full in 1927 and these involved 3,090 shares. Another subscription agreement for 630 shares became a closed transaction within the year when the purchaser deeded real estate to petitioner for the stock. In other cases bonds secured by mortgages were given covering the deferred payments, and in one case the purchaser contracted to deliver to petitioner stock of another corporation and a lease on another apartment. Whether such property was accepted in payment or only as evidence of indebtedness, the acceptance of it by petitioner does not accord with the usual method of doing business on the installment plan. As we understand it, a dealer on the installment plan usually carries the deferred payments on open account or on notes of the purchasers sometimes secured by chattel mortgages on the property sold. Upon the evidence we are not convinced that petitioner, in selling the stock here involved, may properly be classified as one regularly selling on the installment plan and we affirm the respondent's refusal to compute income on the installment basis.

The other question has to do with the amount of $14,739.80, representing assessments paid by petitioner in 1927 on the stock of the corporate owner of the apartment property. Of this sum $4,341.20 was paid on stock sold in 1927. Petitioner contends that the entire sum is deductible as an ordinary and necessary business expense.

It has been repeatedly held that assessments paid on stock of national banks are not deductible by the stockholders but are contributions to capital. *Harry E. Lutz*, 2 B.T.A. 484; *John G. Paxton*, 7 B.T.A. 92; *W. R. Ranney*, 16 B.T.A. 1399; affd., 46 Fed. (2d) 283. We see no reason for applying a different rule here. Petitioner claims that in effect it was acting as agent for the sale of the property owned by 812 Park Avenue Corporation and that, following the holding in *Salathiel R. Fletcher*, 24 B.T.A. 75, it should be allowed to deduct the assessments as part of the selling expense of the property. We fail to see the claimed analogy between the two cases. Petitioner was selling only the stock that it owned in the corporate owner of real estate. As a stockholder it was liable for stock assessments, which in our opinion, under the cases above cited, constitute additional cost of the stock to be taken into account on the sale or other disposition. Counsel for respondent concedes that an adjustment should be made on account of the $4,341.20 paid on stock sold in 1927. This sum will be added to cost in the recomputation.

*Decision will be entered under Rule 50.*