DORIANE K. GRUTMAN, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 20010–80.     Filed February 23, 1983.

*Jeffrey T. Strauss*, for the petitioner.
*Ann Hintermeister*, for the respondent.

OPINION

NIMS, *Judge*: Respondent determined a deficiency in petitioner's Federal income tax for the taxable year 1976 of $2,990. The issue for decision is whether certain cooperative assess-

---

ments paid by petitioner's ex-husband constitute alimony includable in petitioner's income under section 71.[1]

All of the facts have been stipulated and are found accordingly.

Petitioner Doriane Grutman resided at New York, N.Y., at the time the petition was filed.

Petitioner and Norman Grutman were married on December 24, 1961. They have two children: Alexander Marco, born on April 18, 1967, and Anita Danila, born on July 31, 1968.

On June 14, 1967, Norman Grutman purchased 625 shares of stock in a cooperative housing corporation, the 15 West 81st Street Tenant's Corp., for $52,500. Purchase of such shares entitled Norman Grutman to enter into a "proprietary lease" with the corporation for a seven-room duplex on the 14th and 15th floors of the corporation's apartment building at 15 West 81st Street, New York, N.Y.

On June 14, 1967, Norman Grutman signed a proprietary lease for the above-described apartment. The lease provided, in part, as follows:

The term of the lease was until December 31, 2015, unless terminated earlier by events including: (1) The lessee's sale of the corporation's stock, (2) the lessee's default in payment of "rent," and (3) the lessee's notice of cancellation served before April 1 and effective September 30 of any year.

The lessee agreed to pay the lessor "rent" and "additional rent" equal to a proportionate share of the cash requirements of the lessor determined by the lessor's board of directors. The cash requirements of the lessor were to be arrived at by determining—

the estimated expenses and outlays of the Lessor for such year or portion thereof (after deducting any estimated rents or income to be received during such year or portion of year other than rents under proprietary leases) in connection with the ownership, maintenance and operation of the building, the maintenance of the corporate existence of the Lessor and the payment of its obligations, including, but without limiting the generality of the foregoing, taxes, assessments, water charges, sewer rents, insurance premiums, operating expenses, management fees, employees' health, pension, welfare or other fund, alterations, replacements and repairs, expenses and liabilities incurred by the Lessor or its Managing Agent under or by reason

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as in effect during the year in issue.

of this or other leases, interest on all mortgage indebtedness, mortgage amortization payments, any other mortgage principal payments, the payment of any other liens or charges, accounting and legal fees, the payment of any deficit remaining from a previous period, the creation of a reasonable reserve or surplus fund and expenses for other corporate purposes.

In the event the lessee failed to pay the rent or additional rent due under the lease, the lessor was empowered to terminate the lease and void the lessee's shares in the corporation. After reletting the apartment, reselling such shares, and deducting from the proceeds both the lessee's obligations to the lessor and the cost of the reletting, the corporation was to pay over the surplus of the proceeds, if any, to the defaulted lessee.

Finally, the lease stated:

The part of such sums as the Lessee may pay as rent and which the Lessor shall allocate to, and apply to the payment of, the cost of capital improvements or to the principal of a mortgage debt, shall, if the Board of Directors so determines, constitute a contribution by the Lessee to the capital of the Lessor and shall be credited by the Lessor upon its books as contributed capital.

The Grutmans resided in the cooperative apartment prior to their divorce. On September 26, 1975, a Haitian court granted Norman Grutman a divorce from petitioner. The court's judgment incorporated in it the terms of a separation agreement entered into between the spouses on January 1, 1975.

The separation agreement provided that each party was free to reside "at such place or places as he or she may deem fit" and that petitioner was to have custody of the children. The parties further agreed that it would be in the best interests of the children for them to be educated at private elementary and secondary schools in New York City. Accordingly, petitioner covenanted that she would not live at any place other than the Borough of Manhattan or within convenient proximity thereto until both children finished their secondary school education.

The agreement also stated:

4.a. The Husband shall pay to the Wife, during the joint lives of the parties the following sums:

(i) The sum of $1,166 per month commencing January 1, 1975, for the support and maintenance of the Wife, so long as the Wife shall occupy the "Apartment" pursuant to subparagraph 4.e. hereof, until the Wife dies or remarries, whichever event shall first occur. After the Wife shall vacate the

Apartment, the Husband shall pay to the Wife the sum of $1,716 per month, for the support and maintenance of the Wife, until the Wife dies or remarries, whichever event shall first occur. At such time as the monthly payments pursuant to subparagraph 4.a. (ii) shall have been eliminated, and provided the Wife shall have vacated the Apartment, the Husband shall pay to the Wife the sum of $2,083 per month for the support and maintenance of the Wife until the Wife dies or remarries, whichever event shall first occur.

(ii) The sum of $917 per month for the support and maintenance of the Children so long as the Wife shall occupy the Apartment pursuant to subparagraph 4.e. hereof. After the Wife shall vacate the Apartment, the Husband shall pay to the Wife the sum of $1,284 per month for the support and maintenance of the Children. At such time as one of the Children dies, marries or reaches the age of twenty-one, whichever event shall first occur, then the monthly payments pursuant to this subparagraph 4.a.(ii) shall be reduced by the sum of $309 per month. At such time as both of the Children shall have died, married or reached the age of twenty-one, whichever event shall first occur, then the monthly payments pursuant to this subparagraph 4.a.(ii) shall be eliminated.

\*       \*       \*       \*       \*       \*       \*

e. The Husband is the owner of cooperative apartment 14C, at 15 West 81st Street, New York, New York (the "Apartment"). The Wife shall have the right to occupy the Apartment until she dies or remarries, the Children complete their respective college educations, if any, both reach the age of 21, or the Husband sells the Apartment at any time more than three years from the date of this Agreement, whichever event shall first occur.

(i) Within thirty days of the earliest to occur of said events, the Wife will vacate the Apartment and the Husband (or his successors in interest in the case of a sale) shall thereafter have the sole and exclusive right to occupy the Apartment.

\*       \*       \*       \*       \*       \*       \*

(iii) So long as the Wife occupies the Apartment pursuant to the provisions of this subparagraph 4.e. the Husband shall make all payments on account of maintenance thereof and assessments thereon. Provided the Husband shall make such payments the Wife shall indemnify and hold the Husband harmless from any and all costs, fees, charges or liabilities of any kind or nature arising under the proprietary lease with respect to the Apartment or as a result of the use and occupancy thereof.

During 1976, petitioner and her two children occupied the cooperative apartment. During 1976, Norman Grutman paid the rent applicable to the apartment in the total amount of $10,812.48. Based on a February 3, 1977, letter to the cooperative shareholders from a member of the corporation's board of directors, $1,455.44 of this rent was allocable to mortgage interest paid by the corporation, $2,080.13 to real estate taxes paid by the corporation, and $18.94 to mortgage principal amortization payments made by the corporation.

According to the financial statements of the 15 West 81st Street Tenant's Corp., the cooperative had the following income and expenses in 1976:

*Income*

| | |
|---|---:|
| "Rent" from tenant-owners | $927,714 |
| Doctors' offices | 11,208 |
| Servants' rooms | 2,295 |
| Storage bins rental | 647 |
| Interest on savings accounts | 13,055 |
| Miscellaneous income | 2,020 |
| Washing machine | 1,200 |
| Total | 958,139 |

*Expenses*

| | | |
|---|---:|---:|
| Payroll: | | |
| Salaries and wages | $303,073 | |
| Payroll taxes | 21,780 | |
| Workmen's compensation and New York disability insurance | 8,048 | |
| Employees' pension fund | 8,407 | |
| Employees' hospitalization | 14,575 | |
| Uniforms and upkeep | 2,669 | |
| Other payroll costs | 63 | 358,615 |
| Other operating expenses: | | |
| Gas and electricity | 97,838 | |
| Fuel oil | 68,785 | |
| Telephone | 1,232 | |
| Building supplies | 3,823 | |
| Janitorial supplies | 4,962 | |
| Building services | 6,262 | |
| Superintendent expenses | 450 | |
| Fees and dues | 825 | 184,177 |
| Administrative expenses: | | |
| Management fee | 17,500 | |
| Professional fees | 3,956 | |
| Commission | 374 | |
| Stationery and printing | 508 | |
| Other | 846 | 23,184 |
| Repairs and maintenance: | | |
| Building exterior | 53,690 | |
| Elevators | 7,935 | |
| Plumbing | 7,120 | |
| Heat installation upkeep | 5,554 | |
| Lobby decorating | 1,091 | |

| | | |
|---|---:|---:|
| Building and mechanical equipment .. | $707 | |
| Miscellaneous repairs ..................... | 1,464 | |
| Electrical repairs .......................... | 2,144 | |
| Water damage ............................. | 14,830 | |
| Apartment repair and decorating ...... | 1,832 | $96,367 |
| General expenses: | | |
| Franchise taxes—State and city ........ | 5,393 | |
| Water and sewer charges ................ | 15,744 | |
| Insurance ................................... | 11,922 | |
| Real estate taxes .......................... | 183,656 | |
| Mortgage interest ......................... | 123,196 | |
| Vault tax ................................... | 175 | |
| Other general expenses ................... | 536 | |
| Interest on loan ........................... | 134 | 340,756 |
| Total (not counting depreciation) .................... | | 1,003,099 |

In addition to spending $44,960 more than it took in during 1976, the cooperative expended $260,623 for capital improvements. The stockholder's equity accounts, however, were not credited with a capital contribution to reflect the cost of these capital improvements.

In 1980, Norman Grutman sold his shares in the cooperative corporation for $380,000.

Petitioner did not report any of the rent payments on the cooperative apartment as alimony income on her 1976 tax return. In his statutory notice of deficiency, respondent included the entire amount of rent payments (less the portion of such payments attributable to mortgage interest and real estate taxes) made by Norman Grutman to the cooperative as alimony income to petitioner.

The issue in this case is whether rent payments made by an ex-husband to a cooperative apartment corporation whose stock he owns constitute alimony to his ex-wife who lives in the apartment.

As a threshold matter, for any payments to be considered alimony to an ex-spouse under section 71(a)(2), they must be periodic payments, made under a written separation agreement and made because of the marital or family relationship.

Petitioner makes no argument here that Norman Grutman's payments were part of a property settlement (see *Sydnes v. Commissioner*, 68 T.C. 170 (1977), affd. in part and revd. and remanded in part 577 F.2d 60 (8th Cir. 1978)); were in the nature of support payments for the children (see section

71(b); *Commissioner v. Lester*, 366 U.S. 299 (1961)); or were not periodic in nature (see *Pappenheimer v. Allen*, 71 F. Supp. 788 (M.D. Ga. 1947), affd. 164 F.2d 428 (5th Cir. 1947); *Bradley v. Commissioner*, 30 T.C. 701 (1958)).

Petitioner does argue, however, that the cooperative rent payments were not alimony because (1) they were not made "because of the marital or family relationship," and (2) the payments were made primarily to preserve Norman Grutman's ownership interest in the apartment's shares, and the economic benefit of such payments to petitioner was slight.

To the contrary, respondent relies on our holdings in *Rothschild v. Commissioner*, 78 T.C. 149 (1982), appeal dismissed (2d Cir., Sept. 23, 1982), and *Marinello v. Commissioner*, 54 T.C. 577 (1970), and argues that payments made to a third party to secure a right of occupancy for an ex-spouse pursuant to the terms of a separation agreement are alimony to the ex-spouse.

In *Rothschild v. Commissioner, supra,* we recently held that a husband's rent payments to a cooperative whose shares he owned constituted alimony to his ex-wife who lived in the apartment. In *Rothschild,* the record as to how the cooperative used such rent payments was rather slight. We only knew that a portion of such rent was used to pay interest and real estate taxes and that no portion of such payments represented amortization of the mortgage on the apartment building. On that record, we held that the cooperative rent payments served primarily to insure a continued right of occupancy, that they did not primarily benefit the owner-husband, and that they more than incidentally benefited the wife. Accordingly, we held that the wife had alimony income in the amount of the entire rent payments less the portion of such payments attributable to interest and real estate taxes (the portion conceded by respondent).

In the instant case, the parties have presented a more complete record of the cooperative's sources and application of its income. Petitioner, therefore, invites us to reexamine, or at least to distinguish, our holding in *Rothschild* in light of these additional facts.

The primary disagreement between petitioner and respondent centers on who was more benefited by the cooperative rent payments herein, Norman Grutman or petitioner. Peti-

tioner argues that her husband received the major benefit of such payments because (1) the payments enabled her husband to continue holding the cooperative's shares as an investment in a rapidly rising real estate market, (2) the mortgage amortization payments and maintenance payments made by the cooperative out of the rent proceeds enhanced or preserved the value of her husband's shares in the cooperative, and (3) the payments helped satisfy Norman Grutman's desire to have his children live near him. Respondent argues that petitioner received the major benefit of the payments because (1) they secured her occupancy of the apartment, and (2) the majority of the cooperative's expenditures benefited the current occupier and not the owner of the apartment (although respondent argues that, both for administrative convenience and under *Marinello v. Commissioner, supra,* this last fact should be irrelevant).

Before we can answer the question who benefits most by the cooperative rent payments, we must first ask whether this is a relevant consideration in deciding if there is alimony income. It has been consistently held that when a husband[2] makes mortgage payments or capital improvements or incurs gardening, pest control, or repair expenses in connection with a house which the wife does not own but in which she lives, there is no alimony. This result has been variously explained by pointing out the obvious and direct benefit to the owner of the house whose equity is preserved or increased by such expenditures (see *Richards v. Commissioner,* 382 F.2d 538 (6th Cir. 1967), affg. a Memorandum Opinion of this Court; *Gentry v. United States,* 151 Ct. Cl. 386, 283 F.2d 702 (1960); *Isaacson v. Commissioner,* 58 T.C. 659 (1972));[3] by stating that the wife receives too tenuous a benefit from the expenditures to make them income to her (see *Richards v. Commissioner, supra;*

---

[2]In the instant case, we use the terms "husband" as the paying spouse and "wife" as the recipient spouse of alimony payments both for convenience and because that was the actual set of facts in the cases we discuss. Of course, the result would be the same were the wife the payor spouse and the husband the payee spouse. See sec. 7701(a)(17).

[3]See also *Stiles v. Commissioner,* T.C. Memo. 1981-711; *Fisher v. Commissioner,* T.C. Memo. 1970-255.

*Isaacson v. Commissioner, supra*; *Bradley v. Commissioner*, 30 T.C. 701 (1958));[4] and, in the case of mortgage payments, by suggesting that the obligation to make such payments was imposed by the lender and not the separation agreement or divorce decree (see *Bradley v. Commissioner, supra*).[5] By contrast, in *Marinello v. Commissioner, supra*, we held that where a husband satisfied a duty to provide free housing to his ex-wife by making rental payments to his wholly owned corporation, such payments were includable in the wife's income. Although the husband was no doubt indirectly benefited by such payments, we held that the corporate entity should be respected.

Recognizing that there is a "marked uncertainty" in the area of housing payments as alimony (see *Rothschild v. Commissioner, supra* at 152), we think these cases stand for the proposition that, in the area of housing, payments which directly and more than incidentally benefit the wife and which do not directly *and* primarily benefit the husband constitute alimony income to the wife.[6]

The application of this rule to the cooperative rent payments herein leads us to make the two following observations:

First, all the rent payments directly and more than incidentally benefited petitioner. Without them, she would not have had the right to occupy the apartment.

Second, some of the rent payments primarily benefited petitioner's husband, but did not directly benefit him. In this category, we would place the various expenditures made by the cooperative, which, if the corporate entity were not respected and Norman Grutman were treated as the owner of his apartment, would not be treated as alimony under such cases as *Isaacson v. Commissioner, supra*.

One main reason compels us to respect the corporate entity of the cooperative and, under *Marinello v. Commissioner, supra*, give no weight to the indirect benefits provided by the

---

[4]See also *Stiles v. Commissioner, supra*.

[5]See also *Stiles v. Commissioner, supra*; *Fisher v. Commissioner, supra*.

[6]Of course this statement assumes that all the other requirements of sec. 71(a) are met by these payments. One of those requirements, in the instant case, is that the payments be made "because of the marital or family relationship." Whether Norman Grutman's payments met this requirement will be discussed *infra*.

rent payments. A cooperative, with minor exceptions, is treated like any other corporation for purposes of the Internal Revenue Code.[7] It is a taxpaying entity, not a passthrough entity (such as a partnership). For us to ignore this fact and attempt to determine which part of each rent payment was spent on each cooperative expense item would require us to deal with cooperatives as taxable entities for most purposes, but as passthrough entities for the purpose of allocating alimony payments. The difficulty with such an undertaking is illustrated by the facts concerning the cooperative here at issue:

During 1976, the cooperative had $958,139 of income, only $927,714 of which was attributable to tenant-shareholder rents. In the same year, the cooperative made cash expenditures totaling $1,003,099. The cooperative, besides operating at a deficit, spent $260,623 for capital improvements (apparently deriving all of this money from funds other than current rents).

To trace Norman Grutman's rent payments through the corporate coffers or to prorate certain corporate expenditures to him in proportion to his stockholdings is something we think may not be done absent statutory authority.

Certain cooperative expenditures, however, both under the Code and prior cases do yield a direct benefit to the tenant-shareholder of a qualified cooperative.[8] To the extent that Norman Grutman's rent payments yield a direct tax benefit to him, we think that those portions of the payments directly and primarily benefit him and do not constitute alimony to petitioner.

Two of such cooperative expenditures which yield a tax benefit to the tenant-shareholder are payments for mortgage interest and real estate taxes. See sec. 216. Both in the instant case and in *Rothschild v. Commissioner, supra,* the respondent has apparently recognized that it would be unfair to charge the portion of the rent payments attributable to such items as alimony income to the wife.

---

[7]See P. Anderson, Tax Factors in Real Estate Operations 432–438 (6th ed. 1980).

[8]The parties do not argue that the cooperative fails any of the tests set out in sec. 216(b)(1). Respondent apparently concedes this point by not including the items deductible by Norman Grutman under sec. 216(a) in petitioner's income.

Other cooperative expenditures which yield a direct tax benefit to the tenant-shareholder are mortgage payments or capital expenditures which the cooperative treats on its books as being made out of the rent payments and for which the tenant-shareholder is credited by the cooperative with a contribution to capital. See *50 East 75th Street Corp. v. Commissioner*, 78 F.2d 158, 160 (2d Cir. 1935), affg. on this point 29 B.T.A. 277 (1933); *Eckstein v. United States*, 196 Ct. Cl. 644, 452 F.2d 1036, 1041–1046 (1971); *Concord Village, Inc. v. Commissioner*, 65 T.C. 142, 155–157 (1975); *Park Place, Inc. v. Commissioner*, 57 T.C. 767, 777–779 (1972); *Cambridge Apartment Building Corp. v. Commissioner*, 44 B.T.A. 617 (1941); *874 Park Avenue Corp. v. Commissioner*, 23 B.T.A. 400 (1931); *Paducah & Illinois Railroad Co. v. Commissioner*, 2 B.T.A. 1001 (1925). Such amounts are added to the tenant-shareholder's basis in his cooperative stock. *50 East 75th Street Corp. v. Commissioner, supra.* In the instant case, Norman Grutman was credited with an $18.94 contribution to the cooperative's capital out of his 1976 rent payments, which allocation increased the cost basis of his stock. This $18.94 was allocable to mortgage amortization. Since the payment of this portion of the rent assessment directly and primarily benefited petitioner's husband, it did not constitute alimony income to petitioner.

No other cooperative expenditure produced a direct tax benefit for Norman Grutman. Accordingly, all remaining rent payments, since they directly and more than incidentally benefited petitioner, were income to her.

Petitioner argues that the rent payments also directly benefited Norman Grutman in that they enabled him to continue his investment in the cooperative's shares and also made it possible to keep his children living near him. We agree with petitioner that these were direct benefits. Where we part company with petitioner, however, is with her contention that the rent payments were made primarily for the benefit of her ex-spouse.

The argument that the payments were made primarily to continue Norman Grutman's investment in the cooperative is essentially speculation on petitioner's part. The separating spouses clearly intended the rent payments to be of benefit to the wife (petitioner): Paragraph 4.a.(i) of the separation

agreement, quoted above, provides that Norman Grutman will pay petitioner $1,166 per month for her support and maintenance while she occupies the apartment and $1,716 per month if and when she vacates it ($2,083 per month at that time if both children have then died, married, or reached 21). Obviously, these increased monthly support payments are intended to cover petitioner's rent in another location. They give some indication of the magnitude of the financial benefit conferred on petitioner by her ex-husband's cooperative rent payments.

By contrast, there is no evidence here that Norman Grutman viewed his rent payments primarily as payments to continue his investment in the cooperative's stock. While it is certainly true that Norman realized a spectacular profit when he sold the co-op in 1980—4 years after the year in question— there is no indication in the record before us that real estate speculation or investment was a primary consideration in his mind when he bought the co-op in 1967, entered into the separation agreement in 1975, or paid the monthly rent in 1976. Rather, all indications point in the opposite direction: that Norman and petitioner acquired and maintained the property primarily as shelter, at first for the entire family and later for the wife and children. Any real estate acquired as a residence is also, almost by definition, an investment, but in the usual case—as here—the primary purpose is to provide shelter. We therefore must reject petitioner's argument on this point.

With regard to petitioner's argument that the rent payments also benefited Norman Grutman by keeping his children near him, we recognize that we considered this a factor in *Isaacson v. Commissioner, supra* at 665. However, we do not think it was a determinative factor. In any event, in the instant case, both parties to the separation agreement agreed that it would be in the best interests of the children to be brought up in Manhattan or nearby. Thus we think petitioner's desires were as much benefited in this regard by the rent payments as were her former husband's.

In summary, we hold that the full amount of the rent payments, less the portions allocable to mortgage interest, real estate taxes, and mortgage principal amortization, were includable in petitioner's income under section 71.

Petitioner contends that the rent payments herein were not

made "because of the marital or family relationship" (see sec. 71(a)(2)) and cites *Bradley v. Commissioner, supra,* and *Fisher v. Commissioner,* T.C. Memo. 1970–255. In those cases, the Court suggested that mortgage payments made by a husband with respect to a house in which his ex-wife lived could not be considered alimony in part because the obligation to pay the mortgage was imposed by the lender and not the ex-spouse. Petitioner argues that Norman Grutman was similarly obligated to make the rent payments under the proprietary lease and not under the separation agreement. Actually, Norman was equally required to make the rent payments under both. Nevertheless, except, for example, where cooperative rent payments are directly allocated by the cooperative to mortgage amortization and credited to the owner (see discussion, *supra*), such payments do not increase the owner's basis in his stock. Principal payments on a home mortgage *do* increase the owner's equity. To illustrate, in *Bradley*, we pointed out that the husband there "increased the amount of the encumbrance several times, apparently for his own benefit, and it would stretch the imagination to hold that the payments he made in reducing the indebtedness constituted alimony to [the wife]." 30 T.C. at 707. In other words, the husband put cash in his pocket by "mortgaging out." He then had to make the mortgage payments to pay back the cash he received. It was the husband-owner, not the occupant-wife, who benefited by the mortgaging out, and the wife was quite appropriately exonerated from the obligation to treat the mortgage payments as taxable alimony.

Cooperative rent payments, on the other hand, while of course required under the lease, in this context merely make it possible for the husband to meet his obligation of providing a residence for his ex-wife and children, an obligation he would have to meet in some alternative form absent his fortuitous ownership of a co-op. Clearly, then, the rent payments made in the case before us were made because of the marital or family relationship, and certainly not primarily to benefit the ex-husband.

The separation agreement required Norman to make the rent payments (denominated therein as "payments on account of maintenance * * * and assessments") so long as petitioner occupied the apartment. Petitioner was entitled to occupy the

apartment until the earlier of her death or remarriage, the children's completion of their college educations, the children's both attaining age 21, or Norman's sale of the cooperative's shares (such a sale not permitted for the first 3 years). In contrast to *Bradley v. Commissioner, supra,* and *Fisher v. Commissioner, supra,* here, it was the separation agreement that truly compelled the making of the payments. The payments were not in that sense voluntary on Norman Grutman's part but instead were made "because of the marital or family relationship."

Finally, petitioner suggests that to require her to include the rent payments as alimony income is tantamount to requiring her to include the fair rental value of the apartment in her income in violation of such cases as *Pappenheimer v. Allen, supra,* and *Bradley v. Commissioner, supra.*[9] This argument was made and rejected in *Rothschild v. Commissioner, supra.* We reject it again here. Furthermore, there is absolutely no showing here of what the fair market value of annual right of occupancy of the seven-room duplex was in 1976. See *Eckstein v. United States,* 452 F.2d at 1046–1048. That value may or may not have equaled Norman Grutman's rent payments.[10] We are here taxing petitioner only with payments actually made by Norman Grutman. See *Marinello v. Commissioner, supra* at 579. Accordingly, such cases as *Pappenheimer v. Allen, supra,* and *Bradley v. Commissioner, supra,* are inapposite.

*Decision will be entered under Rule 155.*

---

[9]See also *Marinello v. Commissioner,* 54 T.C. 577 (1970); *Stiles v. Commissioner, supra*; *Williamson v. Commissioner,* T.C. Memo. 1978–279.

[10]Cf. Miller, "Condominiums and Cooperatives: Unit Owners and Capital Contributions," 10 J. Real Est. Tax. 38 (1982).