T.C. Summary Opinion 2010-35

UNITED STATES TAX COURT

ERNESTO SALCIDO CONTRERAS AND VICTORIA LEE CONTRERAS,
Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21987-08S.              Filed March 29, 2010.

Ernesto Salcido Contreras and Victoria Lee Contreras,
pro sese.

<u>Heather D. Horton</u>, for respondent.

RUWE, <u>Judge</u>:  This case was heard pursuant to the provisions
of section 7463[1] of the Internal Revenue Code in effect when the
petition was filed.  Pursuant to section 7463(b), the decision to

_____

[1] Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the year at issue, and
any Rule references are to the Tax Court Rules of Practice and
Procedure.

be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

In a notice of deficiency respondent initially determined an $825 deficiency in petitioners' 2006 Federal income tax pursuant to the disallowance of certain expenses deducted as alimony. On their 2006 return petitioners deducted $11,143 as alimony. The parties now agree that petitioners are entitled to deduct as alimony $1,106.18 for property taxes and $217.15 for insurance paid on the former marital residence (Casas Lindas residence) of petitioner Ernesto Salcido Contreras (Mr. Contreras) and his former spouse, Norma Contreras (Norma). Respondent further concedes that petitioners paid and are entitled to an $861.09 alimony deduction for attorney's fees. Petitioners concede that they overstated their original alimony deduction on their 2006 Federal income tax return by $3,377.59.

After concessions the only remaining issue is whether petitioners are entitled to an alimony deduction for the full $5,746 of mortgage payments petitioners made on the Casas Lindas residence, owned and occupied by Norma, during tax year 2006, or whether they are only entitled to deduct one-half of those mortgage payments.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are

incorporated herein by this reference.  At the time the petition was filed, petitioners resided in Arizona.

On or about January 26, 1999, Mr. Contreras and Norma signed a mortgage note for a loan from Tucson Old Pueblo Credit Union to purchase the Casas Lindas residence.  Mr. Contreras and Norma later divorced.  On or about November 15, 2000, the Superior Court of the State of Arizona in and for the County of Pima entered a decree of dissolution of marriage (divorce decree) dividing the marital property so that Norma received, as her sole and separate property, the Casas Lindas residence.  After dividing the marital property, the divorce decree further provides that Mr. Contreras will pay spousal maintenance to Norma.  In this latter regard, the divorce decree, in pertinent part, provides:

> 5.  Petitioner [Mr. Contreras] will pay, as and for spousal maintenance, for the benefit of the Respondent [Norma], the first mortgage on the residence, together with real estate taxes and insurance on the property located at * * * Calle De Casas Lindas, Tucson, AZ, * * *

> 6.  The parties understand that the payments being made for the first mortgage and for the automobile insurance and lien shall be considered spousal maintenance, as if it were received directly by Respondent [Norma], and shall be reportable as income to her and as a deduction for the Petitioner [Mr. Contreras] for federal and state income tax purposes. Petitioner [Mr. Contreras] shall be obligated to pay the spousal maintenance amount, as set forth above, until such time as he becomes eligible for retirement from the Air Force Reserve and the City of Tucson, and the Respondent [Norma] is actually receiving her share of such retirement funds, at which time the spousal

maintenance requirement shall terminate completely. In the event that Respondent [Norma] receives only a portion of the retirement amounts specified above, the difference between those amounts received by her and the mortgage payment, real estate taxes and insurance on the residence shall be paid by Petitioner [Mr. Contreras] until Respondent [Norma] receives the full amount of her retirement proceeds. Alternatively, if Petitioner [Mr. Contreras] receives the Respondent's [Norma's] share of these retirement funds, he shall immediately send them to the Respondent [Norma] so that she is receiving her full entitlement. At such time, the spousal maintenance payment set forth above shall terminate.

On September 30, 2005, Mr. Contreras executed a quitclaim deed transferring his interest in the Casas Lindas residence to Norma. The record does not indicate whether Mr. Contreras' contractual obligation to Tucson Old Pueblo Credit Union was altered when he executed the quitclaim deed.

During 2006 Mr. Contreras and Norma lived apart, and Norma occupied the Casas Lindas residence. Although Norma owned and occupied the Casas Lindas residence during 2006, petitioners, in accordance with the divorce decree, made mortgage payments of $5,746, consisting of principal and interest, on the Casas Lindas residence. On their 2006 Federal income tax return, petitioners claimed an $11,143 alimony deduction.[2]

---

[2] We note that on the basis of the notice of deficiency and the parties' agreement and concessions, respondent has allowed an alimony deduction of $5,057.42 (i.e., $2,873 for one-half of the mortgage payments, $1,106.18 for property taxes, $217.15 for insurance, and $861.09 for attorney's fees), and petitioners have conceded that they overstated their claimed alimony deduction by $3,377.59. The remaining one-half of the mortgage payments

(continued...)

## Discussion

While the property interests of divorcing parties are determined by State law, "'federal law governs the federal income tax treatment of that property.'" Zinsmeister v. Commissioner, T.C. Memo. 2000-364 (quoting Hoover v. Commissioner, 102 F.3d 842, 844 (6th Cir. 1996), affg. T.C. Memo. 1995-183), affd. 21 Fed. Appx. 529 (8th Cir. 2001). Thus, Federal law determines, for income tax purposes, whether, and if so to what extent, the mortgage payments constitute alimony within the meaning of section 71(b)(1).

"Generally, property settlements (or transfers of property between spouses) incident to a divorce neither are taxable events nor give rise to deductions or recognizable income." Estate of Goldman v. Commissioner, 112 T.C. 317, 322 (1999), affd. without published opinion sub nom. Schutter v. Commissioner, 242 F.3d 390 (10th Cir. 2000); see also sec. 1041. However, amounts received as alimony or separate maintenance payments are taxable to the recipient (pursuant to sections 61(a)(8) and 71(a)) and deductible by the payor (pursuant to section 215(a)) in the year paid. Estate of Goldman v. Commissioner, supra at 322.

---

[2](...continued)
($2,873) is in dispute. Thus, the sum of the amounts conceded and still in dispute is $11,308.01, which is $165.01 more than the $11,143 petitioners originally claimed as alimony on their 2006 Federal income tax return. We expect the parties to reconcile the difference in their Rule 155 computations.

More specifically, section 215(a) provides that an individual is allowed to deduct an amount equal to the alimony or separate maintenance payments paid during such individual's taxable year. For purposes of section 215, "'alimony or separate maintenance payment' means any alimony or separate maintenance payment (as defined in section 71(b)) which is includible in the gross income of the recipient under section 71." Sec. 215(b).

Section 71(b)(1) provides a four-step inquiry for determining whether a payment is alimony or separate maintenance. Section 71(b)(1) provides:

> SEC. 71(b). Alimony or Separate Maintenance Payments Defined.--For purposes of this section--
>
>> (1) In general.--The term "alimony or separate maintenance payment" means any payment in cash if--
>>
>>> (A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,
>>>
>>> (B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215,
>>>
>>> (C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and
>>>
>>> (D) there is no liability to make any such payment for any period after

> the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.

Thus, all four requirements of section 71(b)(1) must be met for payments to qualify as alimony or separate maintenance.

Petitioners' argument centers on section 71(b)(1)(A); i.e., whether the mortgage payments were received by (or on behalf of) Norma. Petitioners assert that because the divorce decree clearly delineated those payments as spousal maintenance, i.e., "as if it were received directly by * * * [Norma], and shall be reportable as income to her and as a deduction for * * * [Mr. Contreras] for federal and state income tax purposes," they are entitled to an alimony deduction for those payments. Petitioners attempt to bolster their argument by contending that the only benefit Mr. Contreras received in making the mortgage payments was the subject tax deduction.

Respondent appears to agree that the dispute centers on section 71(b)(1)(A). In his pretrial memorandum respondent posits that subparagraphs (B), (C), and (D) of section 71(b)(1) are not in dispute.[3]

_____

[3] Although respondent states that "Subparagraphs (B), (C) and (D) of I.R.C. § 215 are not in dispute", it is clear from the context of the memorandum that respondent was referring to subpars. (B), (C), and (D) of sec. 71(b)(1), and not sec. 215. Furthermore, sec. 215 does not contain a subpar. (B), (C), or (D). Rather, respondent argues that the "remaining issue in

(continued...)

Respondent argues that because Mr. Contreras is still contractually liable on the mortgage note on the Casas Lindas residence, he received a benefit each time a mortgage payment was made during the 2006 tax year.  In this respect, respondent directs the Court's attention to Zinsmeister v. Commissioner, supra, wherein the Court stated:

> When a divorce court orders one spouse to make payments on a mortgage for which both spouses are jointly liable, a portion of such payments discharges the legal obligation of the other spouse.  In such circumstances the payee spouse has received income under the general principle of Old Colony Trust Co. v. Commissioner, 279 U.S. 716 (1929) (payment by a third party of a person's legal obligation is taxable income to that person). Accordingly, in such cases, one-half of the mortgage payment is includable in the gross income of the payee spouse and, to the extent it otherwise qualifies as alimony, it is deductible by the payor spouse as alimony.  See Taylor v. Commissioner, 45 T.C. 120, 123-124 (1965); Simpson v. Commissioner, T.C. Memo. 1999-251; Zampini v. Commissioner, T.C. Memo. 1991-395; Rev. Rul. 67-420, 1967-2 C.B. 63; see also sec. 1.71-1T(b), Q&A-6, Temporary Income Tax Regs., 49 Fed. Reg. 34455 (Aug. 31, 1984).

Although, as respondent recognizes, the facts in the instant proceeding are not identical to the facts in Zinsmeister (principally, the fact that in the instant proceeding Mr. Contreras had no financial interest in the Casas Lindas residence during 2006), respondent nevertheless argues that because Mr. Contreras remained contractually liable on the mortgage note, as

[3](...continued)
dispute in this case is to what extent the mortgage payments made by petitioner qualify as alimony as defined at subparagraph (A) of I.R.C. § 71(b)(1)."

in Zinsmeister, one-half of the mortgage payments were paid in discharge of his contractual obligation and, therefore, benefited him rather than Norma.  In other words, respondent argues that despite petitioners' payment of the entire monthly mortgage obligation during 2006, one-half of the mortgage payments were made by (or on behalf of) Norma and the other half were made by (or on behalf of) Mr. Contreras.

In Zinsmeister v. Commissioner, T.C. Memo. 2000-364, the former husband and wife held joint title on the marital residence, and both were personally liable on the note securing a first mortgage.  However, only the former husband was liable on the note securing a second mortgage on the marital residence. Pursuant to divorce proceedings in 1993 the State court issued a temporary order that gave possession of the residence to the wife and required the former husband to make payments on the first and second mortgages.  Pursuant to their final divorce decree in 1994, the wife was entitled to the marital residence and was required to make the payments on the first mortgage.  The former husband was required to make the payments on the second mortgage. However, the former husband was given a lien on the residence in an amount approximating the second mortgage, and the wife was required to pay this amount to him by July 1996.  This Court held that the former husband was entitled to claim one-half of the mortgage payments that he made on the first mortgage as an

alimony deduction, but that he was not entitled to claim an alimony deduction for the payments he made on the second mortgage because he alone was liable on that note and his payments on the second mortgage only operated to discharge his personal liabilities.

Unlike the taxpayer in Zinsmeister, however, Mr. Contreras, while arguably jointly liable for the liability on the mortgage note, did not have any financial interest in the Casas Lindas residence during the 2006 tax year.[4]  Consequently, we find the fact that Mr. Contreras lacked any financial interest in the Casas Lindas residence during 2006 sufficient to distinguish this case from Zinsmeister.

On brief respondent refers to section 1.71-1T(b), Q&A-6, Temporary Income Tax Regs., 49 Fed. Reg. 34455 (Aug. 31, 1984) (which provides, in pertinent part:  "Any payments to maintain property owned by the payor spouse and used by the payee spouse

---

[4] Mr. Contreras and Norma gave the mortgage to Tucson Old Pueblo Credit Union to secure the loan to pay all or part of the purchase price of the Casas Lindas residence.  Mr. Contreras quitclaimed the property to Norma in 2005 and has no financial interest in the residence.  State law provides, with limited exceptions not relevant in this case, that a lien of judgment in an action to foreclose such a mortgage does not extend to any other property of the judgment debtor, nor may general execution be issued against the judgment debtor to enforce such judgment, and if the proceeds of the mortgaged real property sold under special execution are insufficient to satisfy the judgment, the judgment may not otherwise be satisfied out of other property of the judgment debtor.  See Ariz. Rev. Stat. Ann. sec. 33-729 (2007).

(including mortgage payments, real estate taxes and insurance premiums) are not payments on behalf of a spouse even if those payments are made pursuant to the terms of the divorce or separation instrument."), and concludes that "Based on our facts, the alternative is also true."  Or, as respondent further explains:  "Mortgage payments made by the payor spouse to maintain property owned and used by the payee spouse are payments on behalf of a spouse when made pursuant to a divorce decree. Consequently, the mortgage payments by Petitioner are in compliance with I.R.C. § 71(b)(1)(A)."

Respondent further draws our attention to and cites Grutman v. Commissioner, 80 T.C. 464, 472 (1983), for the proposition that "in the area of housing, payments which directly and more than incidentally benefit the wife and which do not directly and primarily benefit the husband constitute alimony income to the wife."  Respondent then concludes that

> Since Norma was the sole owner of the * * * Casas Lindas residence in taxable year 2006, the mortgage payments made by Petitioner directly and more than incidentally benefitted Norma.  The mortgage payments secured Norma's right of occupancy, (which is separate and distinct from ownership), reduced Norma's one-half of the monthly note owed to the lender and increased or preserved Norma's equity in the * * * Casas Lindas residence.  The only benefit received by Petitioner was the reduction of his one-half of the monthly note owed to the lender.  Therefore, the mortgage payments primarily benefitted Norma and constitute income to her in the form of alimony.  [Emphasis added.]

Nevertheless, after seemingly arriving at the conclusion that the mortgage payments are alimony, respondent asserts: "The question remains to what extent are the mortgage payments as alimony deductible by Petitioner." However, if the mortgage payments are defined as alimony or separate maintenance under the provisions of section 71(b)(1), then section 215 allows Mr. Contreras an equivalent alimony deduction.

Petitioners' mortgage payments meet the requirement of section 71(b)(1)(A). Section 215 allows a deduction for payments that constitute alimony under section 71. Accordingly, we hold that petitioners are entitled to a $5,746 alimony deduction for the mortgage payments on the Casas Lindas residence for 2006.

To reflect the foregoing,

Decision will be entered
under Rule 155.
