ILLENE ISAACSON, FORMERLY KNOWN AS ILLENE FREITAG, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

JACK FREITAG, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE RESPONDENT

Docket Nos. 3722–70, 3970–70.   Filed July 20, 1972.

*Alan R. Lorber*, for the petitioner in docket No. 3722–70.
*Robert R. Frank*, for the petitioner in docket No. 3970–70.
*Meno W. Piliaris*, for the respondent.

·FORRESTER, *Judge:* Respondent determined deficiencies in petitioners' income tax as follows:

| Taxable year | Illene Isaacson Docket No. 3722–70 | Jack Freitag Docket No. 3970–70 |
|---|---|---|
| 1965 | $1, 369. 46 | $3, 580. 22 |
| 1966 | 1, 509. 17 | 3, 717. 01 |
| 1967 | | 1, 341. 57 |

The issues remaining for decision concern whether certain items constitute alimony within the meaning of sections 71 and 215.[1]

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

Illene Isaacson (formerly known as Illene Freitag and hereinafter referred to as Illene) was a resident of Miami Beach, Fla., at the time she filed the petition in docket No. 3722–70. She filed her Federal income tax returns for the taxable years 1965 and 1966 with the district director of internal revenue in Jacksonville, Fla.

Jack Freitag (hereinafter referred to as Jack) was a resident of Surfside, Fla., at the time he filed the petition in docket No. 3970–70. He filed his Federal income tax returns for the taxable years 1965, 1966, and 1967, with the district director of internal revenue in Jacksonville, Fla.

Illene and Jack were married in June 1955. Two children were born of their marriage and were named Dean Marco Freitag and Clark J. Freitag. The marriage was terminated on November 9, 1961, by a final decree of divorce entered in the Circuit Court of the Eleventh Judicial Circuit of Florida, in and for Dade County. The property settlement agreement which was incorporated into the final decree of divorce provided, in pertinent part, as follows:

FOURTH: That upon the conclusion of the pending Divorce Proceedings and the entry of a Final Decree granting said Divorce wherein this Stipulation and Agreement is approved, ratified, and confirmed in its entirety the HUSBAND agrees:

A. During his lifetime to pay unto the Wife as, and for, alimony, support, and maintenance of the WIFE and CHILDREN the sum of One Hundred Thirty Two Dollars and Fifty ($132.50) Cents per week on Friday of each and every week. These payments shall continue until the WIFE remarries or dies, whichever event occurs first.

B. The HUSBAND agrees, within a reasonable time after the entry of the Final Decree, to convey the property located at 4541 Post Avenue, Miami Beach, Dade County, Florida, to a Trustee naming the CHILDREN as beneficiaries.

---

[1] All statutory references are to the Internal Revenue Code of 1954, unless otherwise specified.

In addition, the HUSBAND agrees to pay the sum of One Hundred Sixty Six ($166.00) Dollars per month for the Mortgage interest and amortization, gardener, and exterminator, and in addition to pay for real estate and personal property taxes assessed and insurance for the premises located at 4541 Post Avenue, Miami Beach, Dade County, Florida, until such time as the WIFE remarries or dies, whichever event occurs first. The WIFE and CHILDREN shall have the use of said premises including the furnishings and equipment located therein, but shall not remove any of said personalty. The HUSBAND may modify the Mortgage covering said premises to effect a reduction in the monthly amortization, however, subject to the rights of the WIFE and CHILDREN to remain in peaceful possession therein.

In the event the WIFE in her sole judgment decides to move from said premises and relocate at another residence within Dade County then, in such event, the Trustee shall be authorized to sell said property. In the event of the death or remarriage of the WIFE, or of her voluntary removal from said premises, then in such event the Trustee is authorized to sell the property and the net proceeds realized from such sale shall be placed in a Trust Fund irrevocably for the use and benefit of the CHILDREN. The corpus of the fund shall be used to earn income based upon conservative investments to be determined by the Trustee and the entire corpus plus earnings thereon shall be disbursed to the two (2) CHILDREN in equal shares if they both shall survive until they have reached their 25th birthdays. In the event there is but one (1) survivor he shall receive the entire fund on the date of his 25th birthday.

C. The HUSBAND further agrees to purchase and keep in full force and effect by paying all the premiums thereon, a hospital and surgical insurance policy on the WIFE and said CHILDREN from the Blue Cross and Blue Shield, Inc., or similar coverage from some other substantial and reputable Insurance Company covering to the extent provided by that Contract, hospital and surgical care for the following period of time, to-wit:

1. For said CHILDREN so long as they shall live, or until their prior marriage or death, or until they shall reach twenty-two (22) years of age.

2. For the WIFE until her death or remarriage.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

H. The HUSBAND agrees that during the time the CHILDREN are under twenty-one (21) years of age and the WIFE is unmarried that he will pay the sum of Five Hundred ($500.00) Dollars per year for vacation expenses for the WIFE and CHILDREN within two (2) weeks from receipt of notice thereof. However, in the event that WIFE does not take the CHILDREN for a vacation trip the HUSBAND may deduct said Five Hundred ($500.00) Dollars from the next ensuing weekly installments.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

FIFTH: The WIFE hereby agrees as follows:

A. That she will not request any alimony or support moneys from said HUSBAND other than that hereinabove provided in this Agreement, it being agreed that the amount of alimony and support herein provided for her was arrived at after carefully taking into consideration her needs for the present and in the future. Said WIFE, also, agrees that the amount of child support money included in this Agreement was carefully considered by her and was agreed upon only after consultation with her Attorney, her family, and others, and that she agrees

that said CHILDREN support payments will adequately provide for said CHILDREN.

Paragraph Fourth of the above agreement was negotiated as a whole to embody Jack's obligations to support Illene and the children. Each subparagraph thereof was intended to set forth one element of Jack's overall obligations.

As provided by paragraph Fourth B of the property settlement agreement, Jack conveyed the property located at 4541 Post Avenue, Miami Beach, Fla. (hereinafter simply referred to as the house), by warranty deed dated November 20, 1961, to Robert R. Frank as trustee for the two children. Jack was not personally liable on the mortgage which encumbered the title to the house. Jack agreed to the provisions of paragraph Fourth B in order to ensure that his children would remain in the Miami area after the divorce.

The annual payments of $500 called for by paragraph Fourth H were originally intended to allow Illene and the children to visit her parents in Denver once a year. When the agreement was drawn, $500 approximated the total cost of round-trip air fare from Miami to Denver for the three of them. However, in 1967 Illene received the full $500 even though she and the children took a much less expensive vacation.

In March 1970 Jack and Illene executed a modification of their property settlement agreement, and this modification was ratified by court order in April 1970. The modification provided, *inter alia*, as follows:

4.a) That the parties agree that paragraph FOURTH B shall be amended to provide that the Wife may reside at the subject premises for a period of ninety (90) days from the date of execution of this Modification Agreement. The Wife, upon expiration of said ninety (90) day period shall forthwith vacate the said premises.

A court order dated May 18, 1970, authorized the house to be sold and directed that the proceeds be placed in trust for the children, in accordance with paragraph Fourth B of the original property settlement.

The following table sets forth the alimony deductions taken by Jack for the years in issue, and also lists the portions of those deductions which were disallowed by respondent:

| Taxable year | Deduction per return | Amount disallowed | Amount allowed |
|---|---|---|---|
| 1965 | $11,167.84 | $4,277.84 | $6,890 |
| 1966 | 12,245.12 | 5,355.12 | 6,890 |
| 1967 | 9,330.04 | 2,440.04 | 6,890 |

The amounts disallowed by respondent include the following payments made by petitioner, the deductibility of which is still in dispute:

|  | 1965 | 1966 | 1967 |
|---|---|---|---|
| Mortgage principal | $538.41 | $572.53 | $598.83 |
| Mortgage-related insurance | 126.59 | 361.31 | 171.33 |
| Gardner and lawn | 327.28 | 406.80 | 420.00 |
| Pest control | 78.00 | 72.00 | 84.00 |
| Insurance on the house | 30.00 | | |
| Medical insurance payments | 16.50 | 108.00 | |
| Vacation payment | 500.00 | 500.00 | 500.00 |
| Tree surgeon | | 28.00 | |
| House repairs | | | 35.00 |

Illene reported alimony income of $6,890 on her Federal income tax returns for both 1965 and 1966. The amount of $6,890 represents the total annual payment required by paragraph Fourth A of the original property settlement agreement. The remainder of the amounts claimed as deductions by Jack arise from other provisions of paragraph Fourth, notably Fourth B, C, and H. In order to safeguard the fisc respondent has assumed inconsistent positions with respect to the amounts in excess of $6,890, including them in Illene's income and disallowing Jack's claimed deductions for them.

OPINION

Sections 71 and 215 provide the statutory framework for deciding whether "alimony" is to be taxed to the husband or the wife.[2] Section 215 allows a deduction for alimony payments by a husband only if such payments are included in the wife's income under section 71. We must decide in this case whether various payments which Jack was required to make under the final divorce decree are income to Illene under section 71.

---

[2] SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS.
 (a) GENERAL RULE.—
  (1) DECREE OF DIVORCE OR SEPARATE MAINTENANCE.—If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation.

  *       *       *       *       *       *       *

 (b) PAYMENTS TO SUPPORT MINOR CHILDREN.—Subsection (a) shall not apply to that part of any payment which the terms of the decree, instrument, or agreement fix, in terms of an amount of money or a part of the payment, as a sum which is payable for the support of minor children of the husband. * * *
SEC. 215. ALIMONY, ETC., PAYMENTS.
 (a) GENERAL RULE.—In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. * * *

Jack argues that the payments in issue are periodic alimony payments which must be included in Illene's income under section 71 and deducted from his income under section 215. Illene argues that section 71 does not require her to include the payments in income. Although respondent determined inconsistent deficiencies against both Jack and Illene in order to protect the fisc, he has argued on brief that the amounts in question do not come within sections 71 and 215 and should therefore be taxable to Jack.

*General.*—Illene and respondent first argue that, since the words "alimony, support, and maintenance" are found only in subparagraph A of paragraph Fourth of the property settlement agreement, the payments required by the other subparagraphs of paragraph Fourth must not be alimony. We disagree. The use and placement of the term "alimony" in the property settlement agreement is not determinative. Cf. *Piel* v. *Commissioner*, 340 F.2d 887, 890 (C.A. 2, 1965), affirming a Memorandum Opinion of this Court. Furthermore, we are convinced from the record that paragraph Fourth was negotiated as a whole, and that its various subparagraphs were each intended to form only a part of the alimony and maintenance agreement.

An analysis of the content of the subparagraphs leads us to the same conclusion. For example, paragraph Fourth C(1) and (2) clearly supplements the provisions of paragraph Fourth A. Moreover, Jack's financial obligations under the agreement are set forth throughout paragraph Fourth, and only a tortured construction could bifurcate the paragraph simply because the term "alimony" is used only in subparagraph A.

*House payments.*—Paragraph Fourth B of the property settlement agreement required Jack to transfer his house in trust to his two children and to allow Illene and the children use of the house. In addition, Jack was directed to continue making the necessary mortgage, maintenance, and tax payments with respect to the house until Illene remarried, died, or voluntarily moved from the house. The parties have stipulated that the mortgage interest payments are deductible by Jack under section 163 and not taxable to Illene. The status of the remainder of the items in paragraph Fourth B is before us for decision.

Jack first argues that the payments of principal on the mortgage should be treated as alimony because they in effect provided free housing for Illene, an economic benefit which he claims is taxable to her under section 71(a) (1). The assumption of this argument is to equate mortgage amortization payments with fair rental value. Such an assumption is unsound on its face, and it is especially so here, for the record is entirely void of evidence of rental value, fair or otherwise. It is true that the furnishing of free housing can be alimony income

to the wife under section 71. See *Doris B. Marinello*, 54 T.C. 577 (1970), but that case involved the deduction by the husband of rent payments actually made for that purpose.

Illene and respondent both contend that, since the house in the instant case had been transferred in trust to the children, any benefit conferred upon Illene by the subsequent mortgage payments was only incidental to the benefit simultaneously inuring to the children through the enhancement of their beneficial interest in the house. After careful consideration of the record herein we agree, and hold that the principal payments did not constitute alimony.

The children were the beneficial owners of the house, and each payment of principal on the mortgage increased their equity by the full amount of the payment. Illene had no legal or equitable interest in the house which could have been enhanced by the principal payments. There is nothing in the record to indicate that the value of Illene's contingent right to occupy the house was anything more than incidental to the value of the increase in the children's equity wrought by each mortgage payment. Jack has advanced no persuasive evidence or argument which would distinguish this case from other cases which have held that mortgage payments do not constitute alimony. *Richards* v. *Commissioner*, 382 F. 2d 538 (C.A. 6, 1967), affirming a Memorandum Opinion of this Court; *Neely B. Taylor, Jr.*, 45 T.C. 120 (1965) ; *James Parks Bradley*, 30 T.C. 701 (1958) ; see also *Pappenheimer* v. *Allen*, 164 F. 2d 428 (C.A. 5, 1947). Furthermore, Jack's motivation in agreeing to allow Illene use of the house was to ensure that the children would remain in the Miami area where he could visit them often. Thus, the mortgage payments benefited him as well as Illene.

Jack's reliance on *Mace* v. *United States*, an unreported case (S.D. Cal. 1964, 14 A.F.T.R. 2d 5381, 64–2 U.S.T.C. par. 9732) is unavailing. The *Mace* case dealt with a situation where the husband conveyed real property to his former wife pursuant to a property settlement agreement, and also agreed to make monthly payments in satisfaction of an encumbrance on the property. The court in *Mace* characterized the monthly mortgage payments as alimony, apparently basing its holding on the fact that the former wife owned the property and the mortgage payments were increasing her equity. The crucial distinction between *Mace* and the instant case is that herein the children owned the house.

We view the remainder of the payments required by paragraph Fourth B in the same light as the mortgage payments. Expenditures such as those for the services of a tree surgeon, for pest control, and for a gardener, all served to enhance and preserve the children's equity in the house. The benefit derived by Illene from such payments was

incidental to the benefit derived by the children, and we hold that these payments did not constitute alimony within the meaning of section 71.

*Vacation payments.*—Paragraph Fourth H of the property settlement agreement obligated Jack to pay $500 to Illene for each year in which she and the children took a vacation. These payments were periodic because they were contingent on Illene's marital status. Sec. 1.71–1(d)(3)(i)(a), Income Tax Regs.

Illene and respondent argue that, since the vacation payments were not to be made unless the children accompanied her on vacation, the payments were of primary benefit to the children and should be treated as child support within the meaning of section 71(b). Section 71(b) excludes from alimony that part of a payment which is "fixed" by the property settlement agreement as payable for the support of the husband's minor children.

The vacation payments were bargained for by Illene as part of the overall settlement agreement. They were intended primarily to enable Illene to go on vacation with her children. She received the full amount whether or not the cost of the vacation totaled $500. In fact, the record indicates that the vacation for which Illene was reimbursed in 1967 cost much less than $500.

Under these facts, we hold that the benefit to Illene was far from incidental. Therefore, since the property settlement agreement failed to "fix" any part of the vacation payments as child support, the entire amount must be treated as alimony. *Commissioner* v. *Lester*, 366 U.S. 299 (1961).

*Medical insurance payments.*—Paragraph Fourth C of the property settlement agreement required that Jack purchase and maintain hospital and surgical insurance covering Illene and the children. Illene was to be covered until her death or remarriage, and the children were to be covered until they reached 22 years of age, died, or married.

The record shows that Jack paid medical insurance premiums totaling $16.50 in 1965 and $108 in 1966. We have been offered no basis to separate that portion of the insurance payments which benefited Illene from that part which benefited the children. We hold, therefore, that the amount of any child support was not "fixed" as required by *Lester*, and that the medical insurance premiums were therefore alimony income to Illene and deductible by Jack.

With respect to the remaining miscellany in contention, the record does not support Jack's contention that they are alimony income to Illene, and consequently he cannot be allowed deductions for them.

*Decisions will be entered under Rule 50.*