MYRNA LABOW, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; RONALD LABOW, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
La Bow v. Commissioner
Docket Nos. 5061-79, 15869-79.
United States Tax Court
T.C. Memo 1987-191; 1987 Tax Ct. Memo LEXIS 195; 53 T.C.M. (CCH) 576; T.C.M. (RIA) 87191; April 13, 1987. *195 M sued her husband R for divorce and obtained an order awarding her alimony pendente lite. R's appeal automatically stayed execution of the order. Held, the order for alimony pendente lite, although stayed, remained effective for purposes of sections 71 and 215, I.R.C. 1954, and R's support payments to M made while they were living separately were alimony. Myrna LaBow, pro se in docket No. 5061-79. Ronald LaBow, pro se in docket No. 15869-79. Vincent J. Guiliano and Paulette Segal, for the respondent. NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Judge: These cases are before the Court on remand from the Court of Appeals for the Second Circuit. LaBow v. Commissioner,763 F.2d 125 (2d Cir. 1985), affg., revg. and remanding T.C. Memo. 1983-417. The issues for decision are: (1) whether for purposes of sections 71(a)(3)[1] and 215 an order for support remains effective while it is stayed pending appeal; (2) whether Ronald LaBow lived in the co-op in 1975 or moved out in 1974; (3) how much, if anything, Ronald LaBow paid in alimony during 1975; and (4) whether Myrna LaBow double counted $1,000 when she admitted that she received $4,240 directly from Ronald and $3,775 from Ronald *197 through the New York Family Court in 1976.
FINDINGS OF FACT After the receipt of the mandate of remand pursuant to LaBow v. Commissioner,763 F.2d 125 (2d Cir. 1985), affg., revg. and remanding T.C. Memo. 1983-417, a further trial was held at which testimony was heard and additional exhibits were admitted into the record. Other exhibits submitted after trial have also been admitted into the record. Rather than make supplemental findings, we have recast and here set forth all findings essential to the disposition of the case under the legal standards enunciated by the court of appeals. Myrna LaBow (hereinafter referred to as Myrna) has two addresses, one in New York, New York, and the other in Weston, Connecticut. Ronald LaBow (hereinafter referred to as Ronald) is a resident of New York, New York. At the time the petitions were filed in this case, both Myrna and Ronald resided in New York, New York. Petitioners were married on July 28, 1960. *198 They had three children who were born on June 30, 1961, November 7, 1967, and April 9, 1970, respectively. Before the years in issue, petitioners resided in a cooperative apartment (hereinafter referred to as the co-op) in New York, New York, that they purchased in 1967. They also spent time in Weston, Connecticut, where they owned property containing two houses (hereinafter referred to as the Connecticut property). In July, 1974, Myrna filed a complaint in the Connecticut court seeking a dissolution of the marriage. Ronald appeared "specially" to challenge the Connecticut court's jurisdiction. On February 25, 1975, the Superior Court of Fairfield County, Connecticut, entered an order for alimony pendente lite (hereinafter referred to as the February 25, 1975, order). The February 25, 1975, order was retroactive to November 1, 1974, and required Ronald to pay Myrna $300 per week and all current bills for maintenance of the co-op and the Connecticut property. Ronald was also required to pay all medical and dental expenses for Myrna and the children, to pay for the education of the minor children and to furnish Myrna with the use of a car. On March 11, 1975, Ronald appealed *199 to the Supreme Court of Connecticut from the February 25, 1975, order. Ronald's appeal automatically stayed the execution of the February 25, 1975, order. Conn. S. Ct. R. section 661 (1968). On June 5, 1975, the Superior Court issued an order terminating the stay of execution resulting from Ronald's appeal from the February 25, 1975, order. On July 16, 1975, the Chief Justice of the Supreme Court of Connecticut signed an order granting Ronald's motion for review of the trial court's order terminating the stay and directing the trial court to set forth its reasons for terminating the stay of the February 25, 1975, order. On December 10, 1975, the Supreme Court of Connecticut vacated the order of the Superior Court terminating the stay of execution of the February 25, 1975, order. On August 17, 1976, the Supreme Court of Connecticut held that the February 25, 1975, order was valid. On February 22, 1977, the Superior Court found Ronald in contempt of the February 25, 1975, order, ordered him to pay $36,032 in arrearages for the period from November 1, 1974, to August 31, 1976, and credited him with the payment of $17,635 to Myrna for the same period. Ronald appealed the February 22, 1977, decision *200 to the Supreme Court of Connecticut. On April 29, 1977, the Superior Court terminated the stay resulting from Ronald's appeal of its February 22, 1977, decision. On May 17, 1977, the Supreme Court of Connecticut upheld the trial court's decision to terminate the stay. Unable to collect the full amount required by the February 25, 1975, order, Myrna filed a claim in the Connecticut Court of Common Pleas. On February 23, 1976, the Connecticut Court of Common Pleas -- Bureau of Support entered a temporary support order requiring Ronald to pay Myrna $750 a week for support. In September, 1975, Ronald sued Myrna for divorce in the Supreme Court of New York. On August 3, 1976, the Family Court of the State of New York entered a temporary support order requiring Ronald to pay the court $2,580 a month for support of Myrna and the children. None of the orders issued February 25, 1975, February 23, 1976, and August 3, 1976, designated any amount of the ordered payments as child support. During the years in issue, Myrna and the three children alternated their residences between the co-op in New York and the Connecticut property. From January 1, 1975, through May 29, 1975, Myrna and *201 the three children resided at the co-op. From May 30, 1975, through September 15, 1976, they resided at the Connecticut property. From September 16, 1976, through December 31, 1976, Myrna and the three children resided at the co-op and made only occasional trips to the Connecticut property. Myrna and Ronald battled over access to the co-op. On October 15, 1975, Ronald was locked out. He sued the 1050 Tenants Corporation and obtained an order from the Supreme Court of New York permitting him to enter the co-op. On April 2, 1976, the Supreme Court of New York issued an order permitting both Ronald and Myrna access to the co-op. Ronald originally claimed to have paid the following amounts as alimony to Myrna: 1975
1976
Checks to Myrna
$9,000.00
$4,735.54
Payments through the
0    6,855.00
New York court system
Cooperative maintenance
8,832.00
0    expenses
Medical expenses
302.50
0    Cable television (Teleprompter)
46.00
0    New York Telephone
465.75
0    Consolidated Edison
984.20
0    Repairs
80.08
0    Connecticut Light & Power
126.13
0    Southern New England Telephone
320.09
0    Fuel - Connecticut
363.34
0    Repair - Tractor
48.52
0    Tuition expenses
9,294.50
1,583.50
TOTAL
$29,863.11
$13,174.04
*202 The following cancelled checks found in the possession of the clerk of the Superior Court of Connecticut correspond with Ronald's alleged alimony payments to Myrna in 1975: 1/1/75 to
5/30/75 to
5/29/75
2/31/75
Checks to Myrna
$3,130.00
$2,000.00
($5,130.00 total)
Cooperative maintenance
4,350.52
1,087.63
expenses ($5,438.15 total)
Medical expenses
234.50
233.00
($467.50 total)
Cable television (Teleprompter)
46.00
0    ($46.00 total)
New York Telephone
351.83
292.90
($644.73 total)
Consolidated Edison
680.65
384.67
($1,065.32 total)
Connecticut Light & Power
80.67
91.40
($172.07 total)
Southern New England Telephone
50.00
219.82
($269.82 total)
Fuel - Connecticut
472.88
43.00
($515.88 total)
Tuition expenses
3,372.50
3,075.19
($6,447.69 total)
TOTAL
$12,769.55
$7,427.61
Other cancelled checks in the possession of the Superior Court do not correspond with Ronald's testimony concerning the alleged alimony payments to Myrna in 1975. All the cancelled checks found in the possession of the Superior Court were from Ronald's personal checking account. The address printed on the cancelled checks *203 was "230 Park Avenue, New York, N.Y. 10017." This is not the address of the co-op. OPINION Sections 71 and 215 were amended by the Tax Reform Act of 1984, Pub. L. 98-369, 98 Stat. 494 and further amended by the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085. The 1984 amendments generally apply to divorce or separation instruments executed after 1984. H. Rept. No. 98-861, 1984-3 C.B. (Vol. 2) 371. The 1986 amendments generally apply to instruments executed after December 31, 1986. Section 1843(c)(2)(A), Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, 2854. Because the years in issue are 1975 and 1976, neither the 1984 amendments nor the 1986 amendments apply in this case. Section 71 as in effect during the years in issue provides in pertinent part: SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS. (a) GENERAL RULE. -- * * * (3) DECREE FOR SUPPORT. -- If a wife is separated from her husband, the wife's gross income includes periodic payments (whether or not made at regular intervals) received by her after the date of the enactment of this title from her husband under a decree entered after March 1, 1954, requiring the husband to make the *204 payments for her support or maintenance. This paragraph shall not apply if the husband and wife make a single return jointly. (b) PAYMENTS TO SUPPORT MINOR CHILDREN. -- Subsection (a) shall not apply to that part of any payment which the terms of the decree, instrument, or agreement fix, in terms of an amount of money or a part of the payment, as a sum which is payable for the support of minor children of the husband. For purposes of the preceding sentence, if any payment is less than the amount specified in the decree, instrument, or agreement, then so much of such payment as does not exceed the sum payable for support shall be considered a payment for such support. Section 215 as in effect during the years in issue provides in pertinent part: SEC. 215. ALIMONY, ETC., PAYMENTS. (a) GENERAL RULE. -- In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. * * * Section 71(a)(3) sets forth certain requirements that must be met before a husband can deduct under section 215 his payments to his wife pursuant to a decree *205 of support and before the wife must include those payments in her gross income. At issue in this case are the requirements under section 71(a)(3) that: (1) the husband's payments must be made pursuant to a decree requiring him to make payments for the support or maintenance of his wife; and (2) the husband and wife must be separated. Myrna contends that these two requirements have not been met because (1) Ronald's payments to her were not made pursuant to an effective decree; and (2) she and Ronald were not separated when the payments were made. In this case three different courts each issued orders requiring Ronald to make support payments to Myrna. Myrna argues that Ronald's support payments made before August, 1976, did not constitute alimony because there was no order for support in effect until that time. Myrna made this same argument when we first heard this case. At that time she failed to produce sufficient proof that the February 25, 1975, order was stayed pending Ronald's appeal. Upon reconsideration and a review of certain documents Myrna submitted after trial and which we have been directed to consider in this proceeding, we now conclude that the February 25, 1975, order *206 was stayed. Section 661 of the Rules for the Supreme Court of Connecticut provides: In actions not criminal, proceedings to enforce or carry out the judgment shall be stayed for twenty days; if the time in which to take an appeal is extended, as provided in Sec. 665, such proceedings shall be stayed until the time to take an appeal has expired; if an appeal is filed, such proceedings shall be stayed until the final determination of the cause; and if the case goes to judgment in this court, until ten days after the decision is announced; but if the judge who tried the case is of the opinion that the extension is sought, the notice is filed or the appeal is taken only for delay or that the due administration of justice requires him to do so, he may at any time, upon motion and hearing, order that the stay be terminated. (P.B. 1951, Sec. 411; 1963.) (Amended May 28, 1968, to take effect Sept. 3, 1968; amended June 9, 1976, to take effect Oct. 1, 1976.) [Conn. S. Ct. R. section 661 (1968).] Under section 661 of the Rules for the Supreme Court of Errors, Ronald's filing of an appeal effected a stay of execution of the February 25, 1975, order until 10 days after August 17, 1976, the *207 date of the final decision of the Supreme Court of Connecticut affirming that order. [2]
*208 In our earlier opinion we determined that if the February 25, 1975, order had been rendered ineffective by a stay, Ronald's payments to Myrna pursuant to that order would be nondeductible voluntary payments rather than deductible alimony payments, citing Daine v. Commissioner,168 F.2d 449 (2d Cir. 1948). Respondent argues that even though the February 25, 1975, order was stayed, it remained effective for purposes of section 71(a)(3). We agree with respondent. In Daine v. Commissioner, the husband made maintenance payments to his wife under a voluntary separation agreement terminable by him on one month's notice. The husband and wife were divorced four years later, and incident to the decree of divorce, the Supreme Court of New York entered a nunc pro tunc order declaring that the judgment and decree "shall have the same force and effect" as if entered on the date of the voluntary separation agreement. The Second Circuit held that, notwithstanding the nunc pro tunc order, at the time the payments were made there was no decree of divorce or of separate maintenance in effect as required by sections 22(k) and 23(u) of the Internal Revenue Code of 1939, in effect *209 during the years in issue in that case. Sections 22(k) and 23(u) of the Internal Revenue Code of 1939 were the forerunners of sections 71(a)(1) and 215 as in effect during the years in issue in this case. Both section 22(k) of the Internal Revenue Code of 1939 and section 71(a)(1) require the inclusion in a wife's income of payments by a husband under a decree of divorce or separate maintenance. There were no provisions in the Internal Revenue Code of 1939 for the inclusion in a wife's income of payments by a husband under a written separation agreement as required by section 71(a)(2) or under a decree for support as required by section 71(a)(3). The decree requirement in section 71(a)(3) is analogous to the same requirement in section 71(a)(1). Under Daine v. Commissioner,supra, there must be an effective decree in existence at the time the maintenance payments are made before the wife is required to include the payments in her gross income. In this case there was a decree, the February 25, 1975 order, in existence at the time that Ronald made support payments to Myrna. Myrna maintains that the automatic stay invalidated the February 25, 1975, order *210 and that therefore any payments made pursuant to that order and before August, 1976, when the Supreme Court affirmed the order, were voluntary payments by Ronald not includible in her gross income. Myrna's understanding of the effect of the stay is incorrect. Under Connecticut law, a stay does not render a judgment ineffective. Continental National American Group v. Majeske,30 Conn. 567, 305 A.2d 291 (1973). The Superior Court of Connecticut recognized the validity of the February 25, 1975, order when it held Ronald in contempt of that order, ordered him to pay arrearages totaling $36,032 for the period from November 1, 1974, to August 31, 1976, and credited him with the payment to Myrna of $17,635 for the same period. Myrna has also submitted exhibits showing that Ronald and his attorney did not believe that he was obligated to make payments under the February 25, 1975, order while it was stayed. Whether Ronald believed that he made the payments pursuant to a decree is irrelevant in this case. Section 71 does not require that either party intend or believe that the payments were made pursuant to a decree. In Daine v. Commissioner,supra, *211 the taxpayer's wife had originally included the amounts received from her husband pursuant to their maintenance agreement as taxable income on her income tax returns. Later she filed claims for refund of alleged overpayments of tax. The wife's original perception concerning the nature of the payments was irrelevant to the determination of the case. See also Wondsel v. Commissioner,350 F.2d 339, 341 (2d Cir. 1965). Myrna has also argued that the order for support issued by the Connecticut Court of Common Pleas -- Bureau for Support on February 23, 1976, was ineffective. Because we have determined that the February 25, 1975, order was effective and that Ronald's payments to Myrna were made pursuant to the February 25, 1975, order, it is unnecessary to address this issue. Separated and Living Apart
Section 71(a)(3) also provides that the husband and wife must be separated and living apart when the support payments are made before the payments will be considered alimony includible in the wife's gross income and deductible by the husband. Section 1.71-1(b)(3)(i), Income Tax Regs. To satisfy the "separated and living apart" requirement of section 71(a)(3), *212 the husband and wife must live in separate residences. Lyddan v. United States,721 F.2d 873 (2d Cir. 1983), cert. denied 467 U.S. 1214 (1984); Washington v. Commissioner,77 T.C. 601 (1981); contra Sydnes v. Commissioner,577 F.2d 60 (8th Cir. 1978), revg. as to this issue 68 T.C. 170 (1977). Accordingly, even though Ronald and Myrna used separate bedrooms when they both lived at the co-op, they were not separated during those times for purposes of section 71(a)(3). While it has been established where Myrna and the children resided during 1975 and 1976, there are conflicting statements by both Ronald and Myrna concerning Ronald's residence during this period. New evidence, although contradictory, has been presented concerning Ronald's residence during the years in issue. Upon consideration of all the evidence, we conclude that Ronald and Myrna lived together at the co-op from January 1, 1975, through May 29, 1975, and from October 1, 1976, through December 31, 1976. The parties agree that Myrna and the three children resided at the co-op from January 1, 1975, through May 29, 1975; at the Connecticut *213 property from May 30, 1975, through September 15, 1976; and at the co-op from September 16, 1976, through December 31, 1976. They also agree that Myrna and Ronald lived in separate residences from May 30, 1975, when Myrna moved to Connecticut, until September 16, 1976, when Myrna moved back to the co-op. Finally, it has been established that Ronald and Myrna resided together at the co-op from October 1, 1976, through December 31, 1976, and that Ronald did not return to the co-op after he was locked out on October 15, 1975, until October, 1976. LaBow v. Commissioner,763 F.2d 125, 131 (2d Cir. 1985), affg., revg. and remanding T.C. Memo. 1983-417. Myrna and Ronald disagree, however, about Ronald's residence during the period from January through May, 1975. At the first trial in this Court, Myrna testified that Ronald lived with her at the co-op from January until May, 1975. Ronald's statements in two affidavits submitted to the Supreme Court of New York during his battle with Myrna over access to the co-op support this testimony. However, in an affidavit submitted to the Supreme Court of New York during the fight over access to the co-op, Myrna stated: *214 "The plaintiff [Ronald] had abandoned me and my children sometime in the spring of 1974 in that he stopped sleeping at the apartment at 1050 Park Avenue [the co-op]." At the first trial in this Court, Ronald contradicted the statements in his affidavits by testifying that he moved out of the co-op in December, 1974, or January, 1975, and did not return until the last third of 1976. We find that all the statements submitted by both petitioners were self-serving at the time they were made, but we have concluded that Myrna's testimony at the trial and Ronald's statements in the affidavits to the Supreme Court of New York are more credible than their other contradictory statements. Accordingly, Ronald's support payments made to Myrna during the time they were living separately from May 30, 1975, through October 1, 1976, were alimony, includible in Myrna's gross income and deductible by Ronald. The Amount of Alimony Paid in 1975
Ronald originally claimed that he paid Myrna alimony totaling $29,863.11 in 1975. Later he conceded that tuition expenses for the children that he had originally claimed as alimony were not deductible by him and not to be included in Myrna's gross *215 income. At the first trial in this Court, however, Ronald was unable to produce any evidence of actual payment. Respondent has now produced cancelled checks that were in the possession of the Superior Court of Connecticut showing payments by Ronald in 1975 to Myrna or for her benefit. Of these cancelled checks, only $20,197.24 corresponded with Ronald's alleged alimony payments to Myrna in 1975. None of the parties have argued that the checks not corresponding with Ronald's alleged alimony payments should be considered alimony. Because there is no issue concerning those checks, we shall only determine whether the cancelled checks corresponding with Ronald's alleged alimony payments were includible in Myrna's gross income and deductible by Ronald in 1975. Because we have concluded that Ronald and Myrna lived together from January 1, 1975, through May 29, 1975, only those checks dated after May 29, 1975, can be considered alimony payments. Of the checks dated after May 29, 1975, $7,427.61 corresponded to Ronald's alleged alimony payments. However, Ronald has conceded that his payments for tuition for the children were not alimony. Accordingly, $3,075.19 in tuition checks dated *216 after May 29, 1975, must be subtracted from the $7,427.61 total. We conclude, therefore, that Ronald made alimony payments to Myrna totaling $4,352.42 in 1975, includible in Myrna's gross income and deductible by Ronald in 1975. Although most of the cancelled checks represent payments by Ronald to third parties on Myrna's behalf, they are nevertheless alimony. Isaacson v. Commissioner,58 T.C. 659 (1972). Included in Ronald's payments to third parties after May 29, 1975, were checks totaling $1,087.63 in cooperative expenses. Respondent has determined that these payments were not made to support Ronald's ownership interest in the co-op but were for Myrna's benefit, and neither Ronald nor Myrna has questioned this conclusion. We therefore accept respondent's determination as to the nature of the cooperative expenses. The Amount of Alimony Paid in 1976
Myrna originally admitted that she received checks totaling $4,240 directly from Ronald and $3,775 from Ronald through the Family Court of New York in 1976. None of the court orders directing these payments fixed any specific amounts as child support, and therefore the entire amount paid by Ronald to Myrna *217 in 1976 was alimony. Commissioner v. Lester,366 U.S. 299 (1961). At the trial in this Court after remand, Myrna testified that she received checks directly from Ronald totaling only $3,240 in 1976 and that she double counted the receipt of $1,000 from Ronald in August, 1976. Ronald did not attempt to refute her testimony, and respondent has conceded this issue. Accordingly, we find that Myrna double counted $1,000 of the $8,015 that she originally had admitted she had received from Ronald in 1976. Myrna has also submitted evidence that she received $3,775 from Ronald through the Family Court of New York during the period from March 1, 1976, through August 1, 1976. It has been established that Ronald and Myrna were not separated for purposes of section 71(a)(3) during the last three months (October through December) of 1976, and therefore amounts Ronald paid to Myrna during that time cannot be considered alimony. Accordingly, we conclude that three-fourths of the $3,240 that Ronald paid directly to Myrna in 1976 and all of the $3,775 paid through the Family Court of New York in 1976 was alimony. Myrna must include $6,205 in her gross income and Ronald may deduct *218 that amount in 1976. Decisions will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect during the years in issue. All rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Respondent argues that the February 25, 1975, order was not stayed until March 11, 1975, when Ronald filed his appeal. Under section 661 of the Rules for the Supreme Court of Connecticut, the February 25, 1975, order was automatically stayed for twenty days. Ronald's filing of his appeal within the twenty-day period kept the stay effective until ten days after the Supreme Court of Connecticut entered its final decision affirming the order. Respondent also argues that the stay was lifted from June 5, 1975, when the trial court issued an order terminating the stay, until July 16, 1975, when the Chief Justice of the Supreme Court of Connecticut granted Ronald's motion for review of the trial court's order terminating the stay or until December 10, 1975, when the Supreme Court of Connecticut vacated the order of the Superior Court terminating the stay. The Rules for the Supreme Court of Connecticut as in effect during the years in issue do not clearly indicate what effect Ronald's motion for review had on the trial court's order terminating the stay. If Ronald's motion was an appeal of the order, it stayed the order under Conn. S. Ct. R. section 661 (1968). The Rules for the Supreme Court of Connecticut were revised in 1978 to provide that a motion for review of an order terminating a stay, in turn, stays the order keeping the original stay alive until the Supreme Court of Connecticut rules otherwise. Conn. S. Ct. R. section 3067 (1978). However, because we have determined that the February 25, 1975, order remained effective despite the existence of the stay, see infra,↩ we need not address the issue concerning the duration of the stay.